2026 APR 13 AM11:04
USDC-EDPA REC'D CLERK

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

BRANDON IRA WILCHCOMBE,

Plaintiff,

v.

CITY OF PHILADELPHIA, et al.,

Defendants.

Civil Action No. 2:26-CV-01331-KBH

JURY TRIAL DEMANDED

**PLAINTIFF'S OMNIBUS OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(B)(6)**

## I. PRELIMINARY STATEMENT

This case arises from the forced sale of a family home at 1721 North Hollywood Street, Philadelphia, Pennsylvania — a property that belonged to the estate of Mary Wilchcombe, in which Plaintiff Brandon Ira Wilchcombe held a legal ownership interest. The City of Philadelphia, through its attorneys and contracted agents, initiated and prosecuted tax foreclosure proceedings that culminated in the sale of that property for $47,800 on February 21, 2025 — a sale Plaintiff alleges was conducted without constitutionally adequate notice and through processes that violated his Fifth and Fourteenth Amendment rights.

Defendants now move to dismiss every count of the Complaint with prejudice under Rule 12(b)(6), asserting four primary grounds: (1) Rooker-Feldman bars jurisdiction; (2) the Takings Clause claim is not ripe; (3) the Due Process claim fails on the merits; and (4) the conspiracy counts are insufficiently pled. As demonstrated below, each argument fails as a matter of controlling law.

Most fundamentally, Defendants' motion ignores the iron rule of pro se litigation: Plaintiff's Complaint must be held to less stringent standards than formal pleadings drafted by lawyers, and this Court is obligated to construe Plaintiff's claims liberally, drawing every reasonable inference in his favor. *Montgomery v. Pinchak*, 294 F.3d 492, 500 (3d Cir. 2002). Even if any count is found deficient, dismissal with prejudice on a pro se plaintiff's first complaint — without leave to amend — constitutes reversible error unless amendment is clearly futile. *Phillips v. County of Allegheny*, 515 F.3d 224, 236 (3d Cir. 2008).

## II. STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At this stage, all factual allegations in the Complaint must be accepted as true and all reasonable inferences drawn in the plaintiff's favor. *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Courts must not conflate the plausibility standard with a probability requirement. *Iqbal*, 556 U.S. at 678.

For pro se litigants, this already-liberal standard is relaxed further. A pro se complaint, however inartfully pleaded, must be construed liberally, and the Court must apply less stringent standards than it would to pleadings drafted by counsel. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972);

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The obligation to construe pro se complaints liberally applies with full force to civil rights actions. *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004).

## III. ARGUMENT

### A. THE ROOKER-FELDMAN DOCTRINE DOES NOT BAR PLAINTIFF'S CLAIMS BECAUSE PLAINTIFF CHALLENGES DEFENDANTS' INDEPENDENT PRE-JUDGMENT CONSTITUTIONAL MISCONDUCT, NOT THE STATE COURT RULING

Defendants invoke Rooker-Feldman as their first and most sweeping defense, claiming that all of Plaintiff's federal claims are foreclosed because they relate to a state court proceeding in which Plaintiff was unsuccessful. This argument fundamentally misapplies the doctrine's narrow scope as defined by the Supreme Court and the Third Circuit.

#### 1. Rooker-Feldman Is Confined to a Narrow Set of Cases

In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), the Supreme Court emphatically clarified that the Rooker-Feldman doctrine is 'confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.' *Id.* at 284. The doctrine is 'narrow' and 'has sometimes been construed to extend far beyond the contours of the Rooker and Feldman cases, overriding Congress's conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts.' *Id.* at 283. The Supreme Court expressly cautioned against overbroad application.

The Third Circuit, applying *Exxon Mobil*, requires that four elements all be established: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state court judgment; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments. *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010). All four elements must be satisfied — the absence of any single element defeats the doctrine.

Most critically, the Third Circuit's 2025 decision in *In re Adams*, 151 F.4th 144, 148 (3d Cir. 2025) — which Defendants themselves cite — reaffirms that Rooker-Feldman applies only 'when a federal plaintiff improperly invokes the jurisdiction of a district court to appeal — in fact or in effect — a state court judgment.' Where the federal claim rests on the defendant's independent constitutional conduct, Rooker-Feldman presents no bar.

**2. Plaintiff's Injuries Were Caused by Defendants' Pre-Judgment Constitutional Misconduct — Not by the State Court's Ruling**

The fatal flaw in Defendants' Rooker-Feldman argument is their conflation of two chronologically and legally distinct events: (1) Defendants' pre-sale constitutional violations occurring before and through February 21, 2025; and (2) the Philadelphia Court of Common Pleas' September 3, 2025 denial of Plaintiff's Motion to Redeem.

Plaintiff does not ask this Court to reverse the state court's September 2025 order. Plaintiff challenges Defendants' own conduct: the alleged failure to provide constitutionally adequate notice before the property was sold on February 21, 2025. That notice failure occurred months before any state court judgment entered. The constitutional injury — loss of property without due process —

was complete at the moment of the sale. No state court ruling 'caused' that injury; Defendants' pre-deprivation conduct did.

This distinction is precisely what the Third Circuit recognized as dispositive in *Great W. Mining*: '[A] plaintiff presents an independent claim ... if the plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party.' *615 F.3d at 167*. Plaintiff's § 1983 claims for constitutional notice violations are independent of, and do not require the rejection of, any state court ruling. They rest on Defendants' own pre-deprivation misconduct.

### 3. Federal Courts Routinely Adjudicate Tax-Sale Notice Claims Without Rooker-Feldman Impeding Jurisdiction

The Supreme Court's unanimous decision in *Jones v. Flowers*, 547 U.S. 220 (2006) is directly on point and dispositive of the Rooker-Feldman issue. In *Jones*, the Supreme Court adjudicated a federal due process challenge to a state tax sale proceeding — ruling in favor of the property owner — without any suggestion that Rooker-Feldman barred the claim. The Court held that when mailed notice of a tax sale is returned unclaimed, due process requires the government to take additional reasonable steps to notify the owner before the sale occurs.

If Rooker-Feldman categorically barred federal jurisdiction over tax-sale due process claims, *Jones v. Flowers* could not have been decided as it was. The Supreme Court's exercise of jurisdiction over that precise type of claim confirms that federal courts have jurisdiction here. Defendants' Rooker-Feldman argument fails.

Moreover, Plaintiff did not appeal the state court's September 2025 ruling — the absence of a state appeal is irrelevant to whether Rooker-Feldman bars a federal claim predicated on pre-judgment

conduct. See *Exxon Mobil*, 544 U.S. at 293 (Rooker-Feldman does not apply merely because a plaintiff failed to appeal in state court; the question is whether the federal claim is inextricably intertwined with a state court judgment).

## B. PLAINTIFF'S TAKINGS CLAUSE CLAIM IS RIPE BECAUSE THE TAKING OF THE PROPERTY IS COMPLETE AND CONSUMMATED

Defendants argue that Plaintiff's Takings Clause claim is premature because the HART surplus proceeds process has not concluded. This argument conflates two separate and analytically distinct components of Plaintiff's Takings claim and misapplies the governing ripeness standard.

### 1. The Taking of the Property Itself Is Complete and Ripe

The Takings Clause of the Fifth Amendment prohibits the government from taking private property without just compensation. *Knick v. Twp. of Scott, Pa.*, 588 U.S. 180, 185 (2019). Under *Knick*, a takings claim accrues — and becomes immediately ripe for adjudication in federal court — at the moment of the taking. The Supreme Court expressly eliminated the prior state-exhaustion requirement and held that a property owner has 'an immediate cause of action in federal court that [the owner] may bring at the time of the taking.' *Id.* at 194.

Here, the taking of 1721 North Hollywood Street occurred on February 21, 2025, when the property was sold at the Tax Sheriff's Sale. That sale constituted a forced government-compelled transfer of Plaintiff's property interest. It is a completed, consummated physical deprivation — not a speculative regulatory impact. See *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 147 (2021) (government-compelled physical appropriations are per se takings that do not require further government 'finality').

The ripeness doctrine's 'finality' requirement — that Defendants rely on from *Pakdel v. City & Cnty. of San Francisco*, 594 U.S. 474 (2021), and residual language from *Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985) — applies to regulatory takings, where the government's regulatory impact on property depends on a final land-use decision. It has no application where the government physically forced the sale and transfer of a property interest. The government reached its 'final decision' on February 21, 2025: it sold the property.

### 2. The Surplus Proceeds Constitute an Independent Ripe Takings Claim

Separate from the taking of the property, Defendants have identified $25,972.26 in surplus proceeds attributable to Plaintiff. These funds represent Plaintiff's vested property right — the excess proceeds of the government's forced sale of his property. Plaintiff submitted the required HART documentation on November 12, 2025. As of the filing of this Complaint on February 26, 2026, over three months had elapsed with no payment.

The Supreme Court's decision in *Tyler v. Hennepin County*, 598 U.S. 631 (2023) is controlling and dispositive on this issue. In *Tyler*, the Supreme Court unanimously held that a property owner has a cognizable property right in the surplus equity from a government-forced tax sale. The government's retention of surplus proceeds to which a plaintiff is entitled constitutes an actionable taking under the Fifth Amendment. The Court's holding eliminates any argument that surplus proceeds claims are not cognizable under the Takings Clause.

Defendants' argument that the claim is premature because the HART process may yield payment inverts the legal standard. A vested property right exists now. An indefinite administrative delay in paying money the government acknowledges is owed is itself a deprivation requiring just compensation — not a defense to ripeness. See *Knick*, 588 U.S. at 185-86 ('A property owner has

a Fifth Amendment right to compensation when the government takes property, regardless of whether it has a procedure for paying such compensation').

## C. PLAINTIFF'S DUE PROCESS CLAIM IS WELL-FOUNDED UNDER JONES v. FLOWERS AND CONTROLLING THIRD CIRCUIT PRECEDENT

### 1. Jones v. Flowers Directly Controls and Defeats Defendants' Motion

The Supreme Court's unanimous decision in *Jones v. Flowers*, 547 U.S. 220 (2006) arose from facts materially indistinguishable from those alleged here. In *Jones*, the state sent certified mail notice of a tax sale that was returned unclaimed. The Supreme Court held that the government's failure to take additional reasonable steps to notify the owner — when it knew that mailed notice had failed — violated procedural due process under the Fourteenth Amendment.

Chief Justice Roberts, writing for the Court, stated the governing principle: 'We do not think that when [the State] learned that its certified letters had not reached [the owner], it was reasonable for it to do nothing.' *Jones*, 547 U.S. at 234. The Court emphasized that the Due Process Clause requires notice 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Plaintiff's Complaint alleges that Defendants failed to provide constitutionally adequate notice before his property was sold on February 21, 2025. Under *Jones*, these allegations state a plausible procedural due process claim. The adequacy of the notice provided — specifically whether it was 'reasonably calculated under all the circumstances' — is a fact-intensive inquiry that cannot be resolved on a 12(b)(6) motion.

**2. Post-Sale Intervention Does Not Retroactively Cure Pre-Sale Due Process Violations**

Defendants argue that because Plaintiff eventually intervened in the state court proceedings in August 2025, he was afforded due process. This argument is incorrect as a matter of law.

Plaintiff intervened on August 18, 2025 — nearly six months after the property had already been sold on February 21, 2025. His property was gone before he had any meaningful opportunity to contest the sale. Post-deprivation intervention does not satisfy the constitutional requirement of pre-deprivation notice and an opportunity to be heard before property is taken. See *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (due process requires 'at some time, an opportunity to be heard at a meaningful time and in a meaningful manner'); *Sniadach v. Family Fin. Corp.*, 395 U.S. 337, 342 (1969) (pre-deprivation hearing ordinarily required when property is at stake).

The constitutional question is not whether Plaintiff eventually found his way into court. The question is whether he received constitutionally adequate notice before the sale occurred that would have given him a genuine opportunity to prevent the taking. Plaintiff's own factual allegations — accepted as true at this stage — indicate he did not. That states a cognizable claim.

**3. Garcia and Zwolak Are Personally Liable as the Individuals Who Initiated the Constitutional Violation**

Defendants Garcia and Zwolak argue that Plaintiff has not identified specific acts they personally took to deprive him of due process. The Complaint and Defendants' own brief contradict this argument. Defendants' Memorandum of Law explicitly states: 'Chief Philadelphia City Attorney Renee Garcia and Chief Real Estate Attorney for the City of Philadelphia, James Zwolak, referred

the delinquent tax account for the property to the City's contracted collections agency, Goehring, Rutter & Boehm for further collection efforts.' ECF 19-1 at 4.

This is personal initiation of the constitutional process that culminated in the allegedly deficient notice and forced sale. Under *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010), personal involvement for § 1983 purposes includes a supervisor who 'set in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.' Garcia and Zwolak personally initiated the foreclosure process. They are personally involved under any fair reading of § 1983 liability.

**4. Qualified Immunity Does Not Shield Garcia, Zwolak, or Bilal**

Although Defendants have not yet raised qualified immunity, Plaintiff addresses it preemptively. Garcia, Zwolak, and Bilal cannot invoke qualified immunity because the constitutional right at issue — the right to adequate pre-deprivation notice before the government forces the sale of your property — was clearly established by the Supreme Court in *Jones v. Flowers* in 2006, years before the events at issue. Any reasonable government official would have known that conducting a tax sale without ensuring constitutionally adequate notice to a known property owner violated clearly established federal law. See *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (right must be clearly established at time of conduct).

## D. PLAINTIFF'S STRATEGIC CONCESSIONS AND REFRAMING OF CLAIMS

### 1. Punitive Damages Against the City of Philadelphia Are Withdrawn — But Preserved Against Individual Defendants

Plaintiff concedes that punitive damages are unavailable against the City of Philadelphia as a municipality. See *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 268 (1981). Plaintiff accordingly withdraws his punitive damages claims against the City only.

Plaintiff expressly preserves his claims for punitive damages against Renae Garcia, James Zwolak, and Rochelle Bilal in their individual capacities. Individual state actors are fully subject to punitive damages under § 1983 when their conduct is found to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the plaintiff's federally protected rights. *Smith v. Wade*, 461 U.S. 30, 56 (1983). Whether Garcia, Zwolak, and Bilal acted with reckless indifference to Plaintiff's constitutional rights is a factual question that cannot be resolved at the pleading stage.

### 2. Claims Against the Philadelphia County Sheriff's Office Are Redirected to the City of Philadelphia Under Monell

Plaintiff concedes that the Philadelphia County Sheriff's Office, as an administrative arm of the City of Philadelphia, lacks independent corporate existence and is not a suable entity. See *Open Inns, Ltd. v. Chester Cnty. Sheriff's Dep't*, 24 F.Supp.2d 410, 430 n.13 (E.D. Pa. 1998). Plaintiff accordingly withdraws his claims against the Sheriff's Office as a separately named defendant.

However, Plaintiff does not withdraw the substantive allegations against the Sheriff's Office's conduct. Those allegations are properly recast as a Monell claim against the City of Philadelphia under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). The Complaint alleges that the

Sheriff's Office routinely delays distribution of surplus proceeds to homeowners following tax foreclosure sales — a practice affecting hundreds of homeowners. This is precisely the type of entrenched municipal custom or policy that gives rise to Monell liability. See *id.* at 694 (municipality liable under § 1983 when a constitutional violation 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers,' or results from a persistent custom).

Plaintiff respectfully requests leave to amend to formally recast these claims as Monell allegations against the City and to add Bid4Assets, Inc., as a potentially state-actor-by-contract defendant under *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) (private party acting under color of state law when it participates in a joint activity with government in enforcing its laws).

## E. THE CONSPIRACY COUNTS ARE SUFFICIENTLY PLED UNDER THE PRO SE STANDARD AND, IN THE ALTERNATIVE, PLAINTIFF REQUESTS LEAVE TO AMEND

### 1. Under the Pro Se Standard, the Conspiracy Allegations Are Sufficient to Survive Dismissal

Defendants acknowledge that pro se complaints must be held to less stringent standards. *Montgomery v. Pinchak*, 294 F.3d 492, 500 (3d Cir. 2002). The Complaint alleges that Garcia, Zwolak, Bilal, the Sheriff's Office, and Bid4Assets, Inc., 'knowingly and intentionally conducted tax foreclosure proceedings and judicial sales of homeowner's property in a manner contrary to the Pennsylvania Real Estate Tax Sale Law.' ECF 1 at ¶ 52.

Conspiracy at the 12(b)(6) stage does not require a plaintiff to identify the precise date, time, and location of an agreement. It requires 'factual allegations sufficient to raise a reasonable expectation

that discovery will reveal evidence of the necessary element.' *Phillips v. Cnty. of Allegheny*, 515 F.3d at 234. Here, Plaintiff alleges that multiple government officials and their contracted agents coordinated to conduct a foreclosure sale without adequate notice, in a pattern affecting hundreds of homeowners. These allegations, liberally construed, plausibly suggest a common course of conduct among the named defendants.

**2. Count IV Is Best Understood as a Monell Claim — Not a Conspiracy — and Should Be Preserved or Repled**

Count IV's allegation that the Sheriff's Office 'routinely delays' surplus distribution — a practice affecting 'hundreds of homeowners' — is not a conspiracy theory requiring proof of an agreement. It is a systemic Monell policy and practice claim. The fact that a pro se plaintiff used the word 'conspiracy' to describe systemic misconduct does not deprive this Court of the ability to liberally construe the claim as what it actually is: a pattern and practice challenge under *Monell*. See *Alston v. Parker*, 363 F.3d at 234 (district courts should liberally construe pro se complaints to determine 'if a pro se plaintiff's claims are actually cognizable under a different legal theory').

**3. Dismissal With Prejudice Is Improper — Leave to Amend Must Be Granted**

The Third Circuit has made emphatically clear that dismissal of a pro se complaint with prejudice, without granting leave to amend, is reversible error unless amendment would be clearly futile or inequitable. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Alston v. Parker*, 363 F.3d at 235 ('district courts must offer amendment — irrespective of whether it is requested — when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile').

Defendants' proposed order dismissing all claims with prejudice would deny Plaintiff any opportunity to correct any perceived pleading deficiencies in his first-filed pro se complaint. This is precisely what the Third Circuit prohibits. Should this Court find any count insufficiently pled, the appropriate remedy is dismissal without prejudice with leave to file an amended complaint within a reasonable period, not the ultimate sanction of with-prejudice dismissal on the first pleading filed by an unrepresented litigant.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Brandon Ira Wilchcombe respectfully requests that this Court:

1. DENY Defendants' Motion to Dismiss in its entirety;
2. Hold that the Rooker-Feldman doctrine does not bar Plaintiff's claims, which arise from Defendants' independent pre-judgment constitutional misconduct;
3. Hold that Plaintiff's Takings Clause claim is ripe as to both the physical taking of the property and the detention of surplus proceeds, pursuant to Knick v. Township of Scott and Tyler v. Hennepin County;
4. Hold that Plaintiff's Due Process claim is legally sufficient under Jones v. Flowers and Mullane v. Central Hanover Bank;
5. Acknowledge Plaintiff's withdrawal of punitive damages claims against the City of Philadelphia and the Philadelphia County Sheriff's Office as a named entity, while preserving those claims against individual defendants Garcia, Zwolak, and Bilal;
6. In the alternative, should the Court dismiss any count, dismiss without prejudice and grant Plaintiff leave to file an amended complaint within thirty (30) days; and

7. Grant such other and further relief as this Court deems just and proper, including but not limited to the scheduling of oral argument on Defendants' Motion.

Respectfully submitted,

Brandon Ira Wilchcombe

c/o Trust Management Associates Inc.

1650 Market Street, Suite 3600

Philadelphia, PA 19103

Pro Se Plaintiff

Date: April 13, 2026

## CERTIFICATE OF SERVICE

I, Brandon Ira Wilchcombe, Pro Se, hereby certify that on the date set forth below, that I caused a true and correct copy of the foregoing MOTION to be served upon the parties listed below via regular mail:

John P. Gonzales, Esq.
MARSHALL DENNEHEY WARNER
COLEMAN AND GOGGIN, P.C.
200 Market Street, Suite 2300
Philadelphia, PA 19103

JANE C. SCHLEICHTER, Esq.,
GRB LAW
1420 Spruce Street
Philadelphia, PA 19102

Connor B. DeFilippis, Esq.,
TROUTMAN PEPPER LOCKE
3900 Two Logan Square
Eighteenth and Arch Street
Philadelphia, PA 19103

Dated: April 13, 2026

Brandon Ira Wilchcombe
Pro Se