2026 APR 27 PM3:56 USDC-EDPA RECD CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRANDON IRA WILCHCOMBE, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. 2:26-cv-01331-KBH |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al, | : | |
| | : | |
| Defendants. | : | JURY TRIAL DEMANDED |
| : | | |

**PLAINTIFF BRANDON IRA WILCHCOMBE'S OPPOSITION TO DEFENDANT BID4ASSETS, INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6) (ECF 26 — FILED APRIL 16, 2026)**

**<u>TABLE OF CONTENTS</u>**


PRELIMINARY STATEMENT .......... 2

STATEMENT OF THE CASE .......... 4

I. LEGAL STANDARD .......... 5

II. ROOKER-FELDMAN IS INAPPLICABLE — PLAINTIFF SEEKS DAMAGES FOR BFA'S INDEPENDENT CONDUCT, NOT REVERSAL OF ANY STATE COURT JUDGMENT .......... 6

A. Roberts v. Pennsylvania Is Factually and Legally Distinguishable .......... 6

B. BFA Was Not a Party to the State Court Action .......... 8

C. Plaintiff Was Not a State-Court Loser as to BFA's Specific Conduct .......... 9

D. None of BFA's Cited Cases Involves a Damages Claim Against the Government's Designated Auctioneer .......... 10

III. BFA WAS ACTING UNDER COLOR OF STATE LAW — THREE INDEPENDENT TESTS EACH SEPARATELY ESTABLISH STATE ACTOR STATUS .......... 11

A. The Public Function Test: Executing Court-Ordered Judicial Property Sales Is a Traditionally Governmental Function ............................................ 11

B. The Close Nexus and Joint Action Test: BFA Is the Government's Exclusive, Government-Designated Executor of State Power ...................... 13

C. BFA's Cases All Involve Buyers and Bidders — Not Government-Designated Auctioneers — and Are Categorically Inapplicable .................. 14

D. The Conspiracy Theory of State Action Is a Fourth Independent Basis ........ 16

IV. COUNT III STATES A VIABLE § 1983 CONSPIRACY CLAIM UNDER THE PRO SE LIBERAL CONSTRUCTION STANDARD .................. 17

A. Conspiracy May Be Inferred from Structural and Circumstantial Facts ....... 17

B. The Exclusive Contract and the Specific Platform Notice Are Concrete Factual Allegations That Support a Conspiracy ........................................ 18

V. COUNT IV STATES A RIPE FEDERAL CONSTITUTIONAL CLAIM UNDER TYLER v. HENNEPIN COUNTY —Pa.R.Civ.P. 3136 CANNOT DISPLACE § 1983 JURISDICTION ........................................ 19

VI. DISMISSAL WITH PREJUDICE IS IMPERMISSIBLE AS TO A PRO SE FIRST PLEADING .......................................................... 23

CONCLUSION ................................................................................................ 24

## PRELIMINARY STATEMENT

Defendant Bid4Assets, Inc. ("BFA") is Philadelphia's exclusive, government-designated executor of court-ordered tax foreclosure sales. Under a contractual arrangement with the City, BFA operates the only online platform through which every Philadelphia tax foreclosure property is auctioned — not as a passive website host, but as the government's sole designated mechanism for converting court orders into completed property transfers. This distinction — between a private buyer participating in a government auction and the government's own designated auctioneer conducting that auction — is the axis on which BFA's entire Motion to Dismiss rises and falls.

BFA's brief makes three arguments: (1) Rooker-Feldman bars this Court's jurisdiction; (2) BFA was not acting under color of state law; and (3) Counts III and IV are inadequately pleaded or belong in state court. Each argument rests on a fundamental mischaracterization of BFA's role. The cases BFA cites uniformly involve private buyers and bidders at sheriff's sales — market participants who purchased government-auctioned property. Not one involves the government's own contracted auctioneer. That distinction is not academic: it is the difference between a person who buys a stamp at the post office and the postal employee who sells it. The former is a private market participant. The latter is performing a governmental function.

Most critically, BFA cites Roberts v. Pennsylvania, a prior ruling of this Court, as though it controls here. It does not. In Roberts, the plaintiff challenged a state court judgment directly. Here, Plaintiff does not ask this Court to disturb, review, or reject any state court ruling. He seeks money damages under 42 U.S.C. § 1983 for BFA's own independent constitutional misconduct — a remedy that can be granted without touching a single state court order.

BFA's Motion was filed by Troutman Pepper Locke LLP, a sophisticated commercial law firm, against a pro se plaintiff on his first complaint. The Third Circuit has been unambiguous: dismissal with prejudice of a pro se plaintiff's first complaint, without leave to amend, is reversible error unless amendment is clearly futile. BFA does not argue futility. Its proposed order — dismissal with prejudice of all claims — is legally unavailable on this record.

## STATEMENT OF THE CASE

Plaintiff Brandon Ira Wilchcombe is the heir of Arthur E. and Mary Wilchcombe, who owned the property located at 1721 North Hollywood Street, Philadelphia, Pennsylvania. Following the 2019 death of the record owner, Mary Wilchcombe, real estate taxes on the property accrued unpaid. The City of Philadelphia initiated tax foreclosure proceedings in April 2024 by having its contracted collections agency, Goehring Rutter & Boehm ("GRB"), file a petition in the Philadelphia Court of Common Pleas. ECF 1 at ¶¶ 8-9.

Notice of the foreclosure proceedings was served by mailing to a person who had been dead for five years and by posting on the front door of the property. No steps were taken to identify or notify any living persons with a constitutional property interest in the property. On July 15, 2024, the Court of Common Pleas entered an order directing the property's sale. ECF 1 at ¶ 16. On January 14, 2025, attorney George Baker filed a notice of sale directing interested parties specifically to BFA's platform — www.bid4assets.com/philadelphia — as the exclusive venue for the auction. ECF 1 at ¶ 18; App. F.

On February 21, 2025, BFA conducted the sale of the property at auction. The property sold for $47,800.00, generating surplus proceeds of $25,972.76 after satisfaction of the tax lien and related costs. ECF 1 at ¶ 37. Plaintiff was not a party to the state court proceedings and had received no notice of them at the time BFA conducted the sale. He did not learn of the proceedings until approximately August 2025. He intervened in the state court action on August 18, 2025 — six months after BFA had already conducted the auction. ECF 1 at ¶ 35.

The Philadelphia Sheriff filed a Proposed Schedule of Distribution on October 14, 2025, identifying $25,972.76 in "UNUSED PROCEEDS" owed to Plaintiff. ECF 1 at ¶ 37. Plaintiff

completed the required HART form and submitted documentation on November 12, 2025. He was informed the process could take six to twelve months with no enforceable disbursement deadline. ECF 1 at ¶ 38. As of the filing of this Complaint on February 26, 2026, Plaintiff had received no payment.

## I. LEGAL STANDARD

A Rule 12(b)(1) facial attack on jurisdiction requires the Court to accept all well-pleaded allegations as true and draw all reasonable inferences in Plaintiff's favor. Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). The burden of demonstrating lack of jurisdiction falls on the party asserting it — here, BFA. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). A Rule 12(b)(6) motion requires the same favorable construction; dismissal is appropriate only where the complaint fails to plead sufficient facts to state a plausible claim. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

For pro se plaintiffs, the standard is even more favorable. A pro se complaint "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," and the Court is "obligated to construe pro se claims 'liberally.'" Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Montgomery v. Pinchak, 294 F.3d 492, 500 (3d Cir. 2002). This liberal construction applies to every count, every argument, and every theory of liability.

Before dismissing a pro se complaint, this Court must grant leave to amend unless amendment is clearly futile. Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002). BFA does not argue futility

anywhere in its 17-page brief. Dismissal with prejudice is therefore unavailable regardless of how the merits are resolved.

## II. ROOKER-FELDMAN IS INAPPLICABLE — PLAINTIFF SEEKS MONEY DAMAGES FOR BFA'S OWN INDEPENDENT CONSTITUTIONAL MISCONDUCT, NOT REVERSAL OF ANY STATE COURT JUDGMENT

The Rooker-Feldman doctrine bars federal district courts from exercising appellate-style jurisdiction over state court judgments. Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The Supreme Court has expressly confined the doctrine to a narrow set of cases: those "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). All four elements must be satisfied. Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 165-66 (3d Cir. 2010). The failure of any single element defeats the doctrine entirely.

Here, at minimum elements one, two, and four are not satisfied. The doctrine does not apply.

### *A. Roberts v. Pennsylvania — BFA's Lead Citation — Is Factually and Legally Distinguishable and Actually Supports Plaintiff's Position*

BFA leads with Roberts v. Pennsylvania, No. 22-4829, 2023 WL 6278874 (E.D. Pa. Sept. 26, 2023) (Hodge, J.), a prior ruling of this Court, as though it controls here. ECF 26 at 4. It does not. The distinction between Roberts and this case is categorical, not merely factual.

In Roberts, the plaintiff had participated in state court proceedings and was affirmatively challenging the state court's judgment — asking the federal court to declare that the state court had acted improperly and to provide relief that would require revisiting the state court's specific findings. The plaintiff's injury in Roberts was caused by the state court's ruling, and the requested federal relief was incompatible with that ruling. That is the paradigmatic Rooker-Feldman case.

This case is categorically different in three independently decisive respects. First, Plaintiff does not ask this Court to reverse, vacate, or revisit any state court order. He does not challenge the Court of Common Pleas' July 15, 2024 sale order. He does not challenge Judge Hall's September 3, 2025 denial of his Motion to Redeem. He seeks money damages under 42 U.S.C. § 1983 for BFA's own constitutional misconduct — misconduct that occurred before either of those state court rulings was made and that would be actionable regardless of how any state court ruled. An award of money damages in a § 1983 action is not a rejection of a state court judgment. It is a compensation for constitutional injuries caused by state actors. Great W. Mining, 615 F.3d at 167 ("[I]f a federal plaintiff asserts injury caused by the defendant's actions and not by the state court judgment, Rooker-Feldman does not bar the federal claim.").

Second, the injury Plaintiff complains of — BFA conducting a forced property auction without constitutionally adequate notice to living interested parties, and BFA's participation in the systemic withholding of surplus proceeds — was caused by BFA's and the City defendants' conduct, not by any state court judgment. The state court ordered the property sold. It did not order

BFA to provide inadequate notice. It did not order the HART process to operate indefinitely without disbursement. The constitutional violations Plaintiff identifies arise from Defendants' independent choices in executing the court's order, not from the order itself.

Third, this Court's own reasoning in Roberts supports Plaintiff here. The principle Roberts applied — that Rooker-Feldman bars claims that would require the federal court to review and reject a state court judgment — by its terms does not reach claims for damages based on independent governmental misconduct. Roberts applied the doctrine because the relief requested was incompatible with the state court judgment. Here, granting Plaintiff money damages is fully compatible with every state court order in this case. The sale stands. The redemption denial stands. Plaintiff asks only to be compensated for the constitutional injuries he suffered.

***B. BFA Was Never a Party to the State Court Action — Rooker-Feldman Cannot Bar Federal Claims Against a Non-Party to the Prior State Proceeding***

Element one of the Rooker-Feldman test requires that the federal plaintiff be a "state-court loser" — a party who actually participated in and lost a state court adjudication. Exxon Mobil, 544 U.S. at 284. BFA was not a party to City of Philadelphia v. Arthur E. Wilchcombe, et al., No. 2404T0017 (Phila. C.C.P.). It was the auction platform through which the property was sold — a governmental instrument, not an adversarial party. There is no state court judgment against BFA, between BFA and Plaintiff, or that in any way defines BFA's liability to Plaintiff for its own constitutional misconduct.

Rooker-Feldman is a doctrine about federal courts acting as appellate courts over state courts. It requires a prior state court adjudication between the parties. Where there is no such

adjudication between Plaintiff and BFA — as is true here — there is nothing for the federal court to "review and reject." The doctrine simply does not apply. Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 421 (3d Cir. 2003) (Rooker-Feldman requires that the federal plaintiff have been a party to the prior state court proceeding).

***C. Plaintiff Was Not a Party to the State Court Proceedings at the Time BFA's Alleged Wrongdoing Occurred — He Cannot Be a 'State-Court Loser' in a Proceeding He Was Never Notified to Attend***

Even setting aside BFA's non-party status, Plaintiff himself was not a participant in the State Court Action when BFA conducted the sale on February 21, 2025. He did not intervene until August 18, 2025 — six months after BFA had already executed the auction. A person who was never notified of a proceeding and therefore never participated in it at the time the alleged constitutional violation occurred cannot be characterized as a "state-court loser" for Rooker-Feldman purposes.

The constitutional injury Plaintiff suffered — loss of his property through a sale conducted without notice to him — occurred in February 2025, before Plaintiff was a party to any state court proceeding. At that moment, BFA executed the government's court order without any process that reached Plaintiff. That pre-participation constitutional violation is the injury at the core of this lawsuit. Rooker-Feldman was never designed to immunize state actors and their private instrumentalities from § 1983 liability for constitutional violations inflicted on persons who received no notice of the proceedings that generated the judicial authority being exercised.

***D. BFA's Cited Sheriff's Sale Cases All Involved Plaintiffs Seeking to Undo Property Transfers — Not Damages Claims Against the Government's Designated Auctioneer***

BFA cites Robinson v. Porges, 382 F. App'x 133 (3d Cir. 2010), Ayala v. Shi, No. 25-446, 2025 WL 817153 (E.D. Pa. Mar. 13, 2025), and Conte v. Mortg. Elec. Registration Sys., No. 14-6788, 2015 WL 1400997 (E.D. Pa. Mar. 27, 2015). ECF 26 at 5. In Robinson, the plaintiff "demand[ed] the return of his home as his own property with free and clear deed and title" — a request that could only be granted by reversing the state court's sale order. 382 F. App'x at 135. In Ayala and Conte, plaintiffs similarly sought relief that required the federal court to declare state court foreclosure orders invalid.

Plaintiff seeks none of this relief. He does not ask for the return of his property. He does not ask this Court to declare the foreclosure void. He seeks money damages for constitutional violations — a remedy available regardless of what the state courts ordered and requiring no review of any state court judgment. BFA's Rooker-Feldman argument fails because BFA's cases are about a fundamentally different type of requested relief. The doctrine bars federal courts from acting as appellate courts over state courts — not from awarding damages for constitutional injuries caused by private contractors' own misconduct.

## III. BFA WAS ACTING UNDER COLOR OF STATE LAW — THREE INDEPENDENT TESTS EACH SEPARATELY ESTABLISH STATE ACTOR STATUS, AND BFA'S CITED CASES INVOLVE BUYERS AND BIDDERS, NOT THE GOVERNMENT'S OWN AUCTIONEER

The threshold question — whether BFA acted under color of state law — is the central battleground of BFA's Motion. BFA's argument rests entirely on cases involving private buyers and bidders who participated in government auctions as market participants on the purchasing side of the transaction. Those cases have no application to BFA, which did not participate in the auction as a buyer. BFA ran the auction. As the government's exclusive, designated, contractually-bound executor of court-ordered forced property sales, BFA's role in Philadelphia's tax foreclosure system satisfies three independent tests for state actor status — any one of which is sufficient to sustain § 1983 liability.

### *A. The Public Function Test: Executing Court-Ordered, Government-Mandated Involuntary Property Sales Is a Function Traditionally Reserved to the State*

Under the public function test, a private entity acts under color of state law when it performs a function "traditionally exclusively reserved to the State." Jackson v. Metropolitan Edison Co., 419 U.S. 345, 352 (1974). The Supreme Court's decision in West v. Atkins, 487 U.S. 42 (1988), established the controlling principle: when a state delegates a function it is constitutionally required to perform — and over which it retains ultimate responsibility — to a private entity, that private entity acts under color of state law in performing that function. Id. at 55-57.

The forced, involuntary sale of private property to satisfy a government tax lien, pursuant to a court order, is not a commercial service. It is the exercise of the government's sovereign power of distraint — one of the most ancient prerogatives of the state. Governments collect taxes through distraint. Courts order property sold. Sheriffs execute judicial sales. These are governmental acts. They have always been governmental acts. The Philadelphia County Sheriff's Office cannot distance itself from BFA by designating BFA as its exclusive online sales platform — any more than a municipality can avoid § 1983 liability by delegating a constitutional obligation to a private contractor. West v. Atkins is explicit: the delegation of a governmental function does not privatize it; it attributes the private actor's conduct to the state.

BFA does not merely list properties in a commercial marketplace. It operates www.bid4assets.com/philadelphia — a Philadelphia-specific platform, designated by the government, identified by name in court-filed notices of sale, through which the Philadelphia Sheriff's Office exclusively executes court-ordered forced property sales. The notice of sale filed by Baker on January 14, 2025 — Appendix F to the Complaint — specifically directed interested parties to BFA's platform as the sole venue for the auction. Not to a general market. To BFA, by name, under the authority of a court order. BFA's execution of that auction was the exercise of governmental power over private property. Under West v. Atkins, it was performed under color of state law.

***B. The Close Nexus, Entwinement, and Joint Action Test: BFA's Relationship with the City Is Structural, Exclusive, and Legally Inseparable from the Exercise of Sovereign Distraint Power***

Under the close nexus and joint action test, a private entity acts under color of state law when "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001); Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005). The Third Circuit has identified multiple sub-tests within this framework — including whether the state has coerced or significantly encouraged the challenged action, whether the private entity's services are predominantly used by the state, and whether the state and private entity have jointly participated in the challenged conduct. Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).

Every relevant factor points toward state action. BFA is not one of many competitive service providers from which the City selected. It is the City's exclusive, designated, contractually-bound online auction platform for tax foreclosure sales. The Complaint alleges — and BFA's own Background section confirms — that the property was sold through BFA's website pursuant to a notice that directed interested parties specifically to www.bid4assets.com/philadelphia. ECF 26 at 2. BFA's platform is the exclusive mechanism through which Philadelphia's tax foreclosure system converts judicial sale orders into completed property transfers. Without BFA, the court order cannot be executed. Without the court order, BFA has nothing to auction. The relationship is not merely contractual — it is constitutive. BFA and the City of Philadelphia jointly produced the outcome that Plaintiff challenges.

BFA invokes Rendell-Baker v. Kohn, 457 U.S. 830 (1982), for the proposition that "acts of private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." ECF 26 at 7. But Rendell-Baker is distinguishable in the way that matters most. In Rendell-Baker, the challenged action — the school's personnel decisions — was wholly distinct from the governmental function the school performed. The state funded the school to provide educational services; it played no role in the school's internal employment practices. The challenged conduct and the governmental nexus were separable.

Here, they are inseparable. The challenged conduct — BFA conducting a court-ordered forced property auction on behalf of the City of Philadelphia — is not separable from the governmental function BFA performs. It is the governmental function BFA performs. BFA is not a vendor who happens to also be involved in a government activity. Its entire reason for existing in Philadelphia's tax foreclosure system is to execute the sovereign's power of distraint over private property. The challenged action and the state function are the same thing. Rendell-Baker does not reach this situation.

### *C. All of BFA's Cited Cases Involve Private Buyers, Bidders, and Market Participants — Not Government-Designated Auctioneers — and Are Categorically Inapplicable*

BFA's state action argument rests on four cases: Brookhart v. Rohr, 385 F. App'x 67 (3d Cir. 2010); Mosley v. Green, No. 23-cv-1665, 2023 WL 4935001 (E.D. Pa. Aug. 2, 2023); Hand v. City of Phila., No. 25-cv-6863, 2026 WL 510569 (E.D. Pa. Feb. 24, 2026); and Rosado v. City of Chester Cnty., Pa., No. 24-cv-6087, 2025 WL 553357 (E.D. Pa. Feb. 19, 2025). ECF 26 at 7. BFA presents these cases as establishing that all parties "involved in Sheriff's sales" are private

actors. This characterization is legally inaccurate and papers over the decisive distinction that makes every one of these cases inapplicable.

In Brookhart v. Rohr, the Third Circuit found that a private individual who purchased property at a sheriff's sale was not a state actor. 385 F. App'x at 69-70. The defendant in Brookhart was a buyer — a private market participant who chose to bid on property being sold at a government auction. He was on the purchasing side of the transaction. He had no governmental authority. He made no governmental decision. He merely chose to purchase property that the government was selling.

Mosley v. Green similarly involved a private individual who acquired property through a sheriff's sale. 2023 WL 4935001, at *4. Hand v. City of Philadelphia likewise concerns private parties who participated in a sheriff's sale on the buying side of the transaction. 2026 WL 510569, at *6. Rosado addresses entities involved in the foreclosure process on the creditor side, not as the government's designated auction executor.

The distinction between these defendants and BFA is categorical, not factual. A buyer at a government auction is a market participant. The government's exclusive, designated auctioneer is a government agent. The difference is the difference between a member of the public who mails a letter at the post office and the postal employee behind the counter. Both interact with the postal system. One is a private market participant. The other is performing a governmental function. Every case BFA cites involves the former. This case concerns the latter. Courts have consistently held that this distinction is legally decisive for state action analysis. See National Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 192-93 (1988) (state action requires that the specific challenged conduct be fairly attributed to the state).

***D. The Conspiracy Theory of State Action Provides a Fourth Independent Basis for Holding BFA Liable Under § 1983***

Independent of the public function, close nexus, and joint action analyses, the conspiracy theory of state action establishes BFA's liability under § 1983. A private entity that conspires with state actors to deprive a person of constitutional rights acts under color of state law for § 1983 purposes. Dennis v. Sparks, 449 U.S. 24, 27-28 (1980) ("Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions."); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Tower v. Glover, 467 U.S. 914, 920 (1984).

This theory does not require that BFA independently exercise governmental power. It requires only that BFA reached an understanding with state actors — the City, Garcia, Zwolak, Bilal, and the Sheriff's Office — to engage in conduct that deprived Plaintiff of constitutional rights. Count III alleges precisely this. The conspiracy theory of state action independently forecloses BFA's categorical argument that it is a purely private entity beyond the reach of § 1983. Even if Brookhart, Mosley, and Hand applied — and they do not — Dennis v. Sparks establishes that private parties who conspire with government actors to deprive persons of constitutional rights are § 1983 defendants. That principle applies to BFA.

## IV. COUNT III STATES A VIABLE § 1983 CONSPIRACY CLAIM BECAUSE THE STRUCTURAL AND OPERATIONAL FACTS PLAUSIBLY ALLEGE A MEETING OF MINDS BETWEEN BFA AND THE CITY DEFENDANTS

### *A. Under the Pro Se Liberal Construction Standard, Conspiracy May Be Inferred from Structural and Operational Facts Without Direct Evidence of Specific Communications*

BFA argues that Count III must be dismissed because Plaintiff relies on conclusory terms — "per its Agreement" and "partnership between the SHERIFF and BFA" — without pleading the specific terms, timing, or mechanism of any agreement. ECF 26 at 7-8. This argument applies Iqbal too stringently for a pro se plaintiff and ignores the Third Circuit's established rule that conspiracy may be inferred from circumstantial and structural evidence.

In Jutrowski v. Township of Riverdale, 904 F.3d 280 (3d Cir. 2018), the Third Circuit held that to survive a motion to dismiss a § 1983 conspiracy claim, a plaintiff must allege facts from which a "meeting of the minds" or "understanding" to conspire can be reasonably inferred — and that this showing "need not be shown by direct evidence." Id. at 295. Circumstantial evidence of coordinated conduct, shared objectives, and structural relationships is sufficient at the pleading stage. Id. The plaintiff need not plead specific dates of meetings, specific language of communications, or specific names of individuals who reached the agreement. Id.

For pro se plaintiffs, this standard is applied even more liberally. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). The Court must construe the Complaint to raise the strongest argument consistent with its allegations. Id. Applied to this Complaint, the allegations in Count III describe a structural conspiracy: BFA and the City defendants operated under an exclusive contractual

arrangement through which unconstitutional tax foreclosure sales were conducted and surplus proceeds were withheld. The agreement alleged is the exclusive contract itself — a documented operational arrangement between BFA and the City that structured the conduct Plaintiff challenges.

***B. The Exclusive Contract and the Specific Platform Notice Are Concrete Factual Allegations That Plausibly Support Concerted Action***

The Complaint alleges the following structural and operational facts that, accepted as true and construed liberally, plausibly support a § 1983 conspiracy: (1) BFA operates as the City's exclusive, designated online auction platform for Philadelphia tax foreclosure sales; (2) the court-filed notice of sale (Appendix F to the Complaint) directed interested parties specifically to www.bid4assets.com/philadelphia, designating BFA by name as the sole venue; (3) BFA conducted the sale of Plaintiff's property on February 21, 2025, pursuant to this arrangement; (4) the proceeds of that sale — $25,972.76 identified as owed to Plaintiff — remain in a HART process with no enforceable disbursement timeline; and (5) BFA is alleged to have acted "per its Agreement" with the City defendants and in "partnership" with the Sheriff's Office in conducting these constitutionally deficient proceedings.

These facts are not conclusory. They identify who (BFA, the City defendants, the Sheriff), what (conducting constitutionally defective forced property sales and withholding surplus proceeds), when (beginning April 2024 through the present), and through what mechanism (BFA's exclusive government-designated platform under a contractual arrangement with the City). The exclusive, ongoing, structural contractual relationship between BFA and the City — through which every Philadelphia tax foreclosure sale is conducted — is itself evidence of a sustained

understanding to engage in the challenged conduct. Jutrowski, 904 F.3d at 295 ("meeting of the minds" may be inferred from circumstantial and structural facts).

BFA's contention that Plaintiff "alleges nothing more than that the City of Philadelphia utilized BFA's online auction website" fundamentally mischaracterizes BFA's role. ECF 26 at 7. BFA is not a passive website host. It is the government's exclusive, contractually-designated executor of forced property sales. Under the pro se liberal construction standard, the distinction between "website host" and "government's designated auctioneer" is one that must be drawn in Plaintiff's favor. Whether BFA's structural relationship with the City constitutes a conspiracy is a question of fact that cannot be resolved on a 12(b)(6) motion.

## V. COUNT IV STATES A RIPE FEDERAL CONSTITUTIONAL CLAIM UNDER TYLER v. HENNEPIN COUNTY AND 42 U.S.C. § 1983 — Pa.R.Civ.P. 3136 CANNOT DIVEST THIS COURT OF JURISDICTION OVER A FEDERAL CONSTITUTIONAL CLAIM

### *A. Monroe v. Pape and Patsy v. Board of Regents Establish That § 1983 Provides an Independent Federal Remedy That State Procedural Rules Cannot Displace*

BFA argues that Count IV should be dismissed because "the correct forum for filing said exceptions" to the distribution schedule is the Philadelphia Court of Common Pleas under Pa.R.Civ.P. 3136. ECF 26 at 8. This argument misunderstands the relationship between state procedural rules and federal § 1983 jurisdiction. It is foreclosed by sixty years of Supreme Court precedent.

In Monroe v. Pape, 365 U.S. 167 (1961), the Supreme Court held that 42 U.S.C. § 1983 provides an independent federal cause of action for constitutional violations that is not conditioned on, limited by, or displaced by the availability of state court remedies. The Court explained that Congress enacted § 1983 specifically because state processes had proven inadequate to vindicate federal constitutional rights. Id. at 174-75. In Patsy v. Board of Regents, 457 U.S. 496, 501 (1982), the Court reaffirmed this principle: "[E]xhaustion of state administrative remedies should not be required as a prerequisite to bringing an action under § 1983."

BFA's argument — that because Pa.R.Civ.P. 3136 provides a state procedure for distribution exceptions, this Court lacks power to hear Plaintiff's federal constitutional claim — is not a subject-matter jurisdiction argument. It is an exhaustion argument, and it is precisely the argument the Supreme Court rejected in Monroe v. Pape and Patsy. Plaintiff is not challenging the distribution schedule as a procedural matter. He is asserting that BFA and the Sheriff's Office conspired to withhold identified surplus proceeds in violation of his rights under the Fifth and Fourteenth Amendments. That is a federal constitutional claim cognizable in this Court regardless of what Pennsylvania procedural rule 3136 provides.

***B. Tyler v. Hennepin County Establishes That Surplus Proceeds Are Constitutionally Protected Property and That Their Withholding Is a Federal Taking***

BFA's characterization of Count IV as merely a state procedural challenge to a distribution schedule ignores the constitutional foundation of Plaintiff's claim. Count IV is grounded in the Supreme Court's unanimous decision in Tyler v. Hennepin County, 598 U.S. 631 (2023), which Plaintiff incorporates as the constitutional basis for his surplus proceeds claim.

In Tyler, the Supreme Court held that when a government entity seizes property for tax delinquency and sells it, the former property owner retains a constitutionally protected property interest in any surplus proceeds that exceed the outstanding tax debt. 598 U.S. at 640-41. The Court was explicit: the Takings Clause protects not merely the property itself but the owner's equitable entitlement to the value of the property above and beyond the government's lien. A government entity that retains such surplus — whether by keeping it outright or by subjecting it to indefinite administrative delay without any enforceable disbursement obligation — effects a taking in violation of the Fifth Amendment, incorporated against the states through the Fourteenth. Id. at 641-42.

Plaintiff's Complaint alleges precisely what Tyler prohibits. The Philadelphia Sheriff filed a Proposed Schedule of Distribution on October 14, 2025, identifying $25,972.76 as "UNUSED PROCEEDS" owed to Plaintiff. ECF 1 at ¶ 37. Plaintiff completed the required HART form on November 12, 2025. Id. at ¶ 38. He was told the process could take six to twelve months with no enforceable timeline and no guarantee of any amount to be paid. Id. As of the filing of the Complaint in February 2026 — three months after Plaintiff completed the required documentation — he had received nothing. These allegations, accepted as true, describe the precise scenario that Tyler declares unconstitutional: a government entity holding identified surplus proceeds belonging to a former property owner, indefinitely and without due process, under a process with no enforceable disbursement obligation.

BFA's role in Count IV is directly connected to its role as the auction platform through which the sale generating the surplus was conducted. BFA executed the $47,800.00 sale. That sale produced the surplus. BFA's exclusive contractual participation in the sale process connects it to

the constitutional violation the surplus withholding represents. Whether BFA's connection to the proceeds chain makes it a participant in the Count IV conspiracy is a factual question that cannot be resolved on a 12(b)(6) motion under the pro se liberal construction standard.

***C. Pa.R.Civ.P. 3136 Provides a Procedural Framework for State Court Proceedings — It Has No Power to Limit Federal Constitutional Claims Under § 1983***

BFA cites Pa.R.Civ.P. 3136 as establishing that state court is the proper forum for distribution exceptions. Even if Plaintiff's claim were properly characterized as a procedural distribution objection — which it is not — Pennsylvania procedural rules cannot limit federal court jurisdiction over § 1983 claims. The Supremacy Clause, U.S. Const. art. VI, cl. 2, makes federal law — including the federal right of action created by 42 U.S.C. § 1983 — supreme over inconsistent state procedural requirements. A state legislature may not channel federal constitutional claims away from federal courts by creating state procedural alternatives. Monroe v. Pape, 365 U.S. at 174.

Moreover, Plaintiff's claim is not a challenge to the distribution schedule itself. He does not dispute which line items appear on the schedule or how the arithmetic was calculated. He asserts that the government's indefinite, constitutionally inadequate withholding of his identified property interest in surplus proceeds violates the Fifth and Fourteenth Amendments — a federal constitutional claim under Tyler v. Hennepin County. Pa.R.Civ.P. 3136 provides no mechanism for adjudicating whether the government's surplus retention process satisfies the Constitution. Federal § 1983 jurisdiction is not only available — it is the appropriate vehicle for this claim.

## VI. DISMISSAL WITH PREJUDICE IS LEGALLY IMPERMISSIBLE — BFA HAS NOT ARGUED FUTILITY AND CANNOT ESTABLISH IT

BFA's proposed order seeks dismissal of Counts III and IV "with prejudice." ECF 26, Proposed Order at 1. This is the most egregious legal error in BFA's Motion — and notably, BFA is represented by one of the country's largest law firms. Dismissal with prejudice of a pro se plaintiff's first complaint, without leave to amend, is categorically impermissible under Third Circuit law unless the party seeking dismissal demonstrates that amendment would be futile. Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000).

BFA's 17-page brief contains no futility argument. Not a sentence. Not a footnote. Not a reference to the word. BFA does not contend that an amended complaint would fail to cure any identified deficiency. The failure to argue futility is itself fatal to the request for dismissal with prejudice. The burden of establishing futility falls on the party seeking dismissal; BFA has not met — has not even attempted to meet — that burden. Shane v. Fauver, 213 F.3d at 115.

Amendment is plainly not futile. In an Amended Complaint, Plaintiff can plead with additional specificity: (1) the specific terms of BFA's exclusive contractual arrangement with the City of Philadelphia governing tax foreclosure auctions, including its exclusivity provisions, duration, and scope; (2) the operational details of BFA's role in executing court-ordered sales beyond merely hosting a website — the bid processing, the confirmation mechanisms, and BFA's relationship to the post-sale proceeds chain; (3) specific facts supporting the conspiracy claim, including the structural alignment between BFA's exclusive platform and the City defendants' unconstitutional practices affecting deceased-owner properties; (4) a direct Tyler v. Hennepin

County takings claim as the explicit constitutional foundation of Count IV; and (5) additional facts regarding BFA's knowledge of and participation in the surplus proceeds withholding scheme alleged in Count IV.

Dismissal with prejudice on a first pro se complaint is not a remedy the Third Circuit makes available for policy reasons as well as doctrinal ones. Pro se plaintiffs lack the legal training to anticipate every element of every claim. The liberal amendment policy of Fed. R. Civ. P. 15(a), combined with the pro se liberal construction standard, creates a mandatory obligation to permit amendment before terminating a plaintiff's ability to pursue meritorious constitutional claims. That obligation is particularly weighty here, where the constitutional violations alleged — loss of inherited property through a process that sent notice to a person dead for five years, and indefinite withholding of identified surplus proceeds — are exactly the type of claims Congress enacted § 1983 to vindicate.

## CONCLUSION

BFA is not a bystander to Philadelphia's tax foreclosure system. It is its exclusive, government-designated executor — the contractually-bound entity through which the City converts judicial sale orders into completed property seizures. That role makes BFA a state actor under three independent tests. It makes Rooker-Feldman inapplicable because BFA was never a party to the state court proceedings and Plaintiff does not seek to disturb any state court ruling. It makes Count III's conspiracy allegations plausible under the pro se liberal construction standard. And it makes Count IV a ripe federal constitutional claim under Tyler v. Hennepin County that no state procedural rule can displace.

Roberts v. Pennsylvania, BFA's lead citation, supports Plaintiff — not BFA — because Roberts applied Rooker-Feldman only where the requested federal relief was incompatible with a state court judgment. Granting money damages here is fully compatible with every state court order in this case. BFA's state action cases — Brookhart, Mosley, Hand — involve buyers and bidders, not government-designated auctioneers. Rendell-Baker is inapplicable because the challenged conduct here is inseparable from BFA's governmental function.

For all of the foregoing reasons, Plaintiff respectfully requests that this Court:

(1) DENY BFA's Motion to Dismiss in its entirety;

(2) HOLD that Rooker-Feldman does not bar Counts III or IV against BFA;

(3) HOLD that BFA acted under color of state law under the public function test, close nexus/joint action test, and/or conspiracy theory of state action;

(4) HOLD that Count III states a plausible § 1983 conspiracy claim under the pro se liberal construction standard;

(5) HOLD that Count IV states an independent federal constitutional claim under Tyler v. Hennepin County, 598 U.S. 631 (2023), and 42 U.S.C. § 1983 that Pa.R.Civ.P. 3136 cannot displace;

(6) In the alternative, DISMISS any deficient claims WITHOUT PREJUDICE and GRANT Plaintiff leave to file an Amended Complaint within thirty (30) days, as BFA has failed to establish futility; and

(7) SCHEDULE oral argument on BFA's Motion to Dismiss given the substantial constitutional questions presented, including the application of Tyler v. Hennepin County to the surplus proceeds claim and the state actor status of government-designated online auction platforms.

Respectfully submitted,

BRANDON IRA WILCHCOMBE

Pro Se

# CERTIFICATE OF SERVICE

I, Brandon Ira Wilchcombe, Pro Se, hereby certify that on the date set forth below, that I caused a true and correct copy of the foregoing MOTION to be served upon the parties listed below via regular mail:

John P. Gonzales, Esq.
MARSHALL DENNEHEY WARNER
COLEMAN AND GOGGIN, P.C.
200 Market Street, Suite 2300
Philadelphia, PA 19103

JANE C. SCHLEICHTER, Esq.,
GRB LAW
1420 Spruce Street
Philadelphia, PA 19102

Connor B. DeFilippis, Esq.,
TROUTMAN PEPPER LOCKE
3900 Two Logan Square
Eighteenth and Arch Street
Philadelphia, PA 19103

Dated: April 27th, 2026

Brandon Ira Wilchcombe
Pro Se