**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRANDON IRA WILCHCOMBE, | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. 2:26-cv-01331-KBH |
| v. | : | |
| CITY OF PHILADELPHIA, et al, | : | |
| Defendants. | : | JURY TRIAL DEMANDED |

**PLAINTIFF BRANDON IRA WILCHCOMBE'S SUR-REPLY IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ADDRESSING NEW ARGUMENTS RAISED IN ECF 30 (APRIL 17, 2026)**

## PRELIMINARY STATEMENT

Defendants' Reply Brief (ECF 30) introduces five categories of new argument that were not raised in their original Motion to Dismiss: (1) Plaintiff lacked a cognizable property interest because his name does not appear on the deed; (2) Plaintiff's failure to register under 53 P.S. § 7193.1 eliminates both his standing and any constitutional notice obligation; (3) Lin-Hendel v. Turner bars Plaintiff's claims under Rooker-Feldman; (4) Jones v. Flowers is inapplicable because the plaintiff in that case owned the property; and (5) leave to amend would be futile. Each argument is wrong — several are contradicted by Defendants' own prior filings in this very case. This Sur-Reply demonstrates why all five fail and why, under any fair reading of the record, Plaintiff's claims must proceed.

## I. DEFENDANTS' OWN PLEADINGS ESTABLISH THAT THE CITY KNEW MARY WILCHCOMBE WAS DEAD — DESTROYING THEIR PROPERTY INTEREST ARGUMENT AND THEIR JONES DISTINCTION SIMULTANEOUSLY

### *A. The City's Own Memorandum Is a Judicial Admission That the Government Knew the Record Owner Was Deceased*

Defendants argue that because Plaintiff's name did not appear on the deed and he did not register under 53 P.S. § 7193.1, he had no cognizable property interest and the City had no notice obligation. ECF 30 at 3-4. This argument is demolished by the City's own prior submission to this Court.

In Defendants' Memorandum of Law in Support of their Motion to Dismiss (ECF 19-1, at 4), the City stated — without qualification, as a statement of background fact — that "[t]he Philadelphia Department of Revenue's September 3, 2025 Realty Tax Report reflects that real estate taxes on the Property began accruing after the 2019 death of the record owner, Mary Wilchcombe." This is not an allegation by Plaintiff. It is a factual assertion by Defendants' counsel. It constitutes a judicial admission binding on Defendants throughout this litigation. See In re Teleglobe Commc'ns Corp., 493 F.3d 345, 377 (3d Cir. 2007) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding on the party making them."); Christian Legal Soc'y v. Walker, 453 F.3d 853, 865 (7th Cir. 2006).

The import of this admission is decisive on multiple fronts. The City knew in 2019 — and certainly when it initiated foreclosure proceedings in April 2024 — that Mary Wilchcombe was dead. It then sent a notice to her at the property address and posted a notice on the front door of a

property whose record owner had been dead for five years. It took no further steps to identify living interested parties despite this actual, documented knowledge. Defendants cannot now argue, in the same litigation, both that (a) the government followed statutory procedures and satisfied due process, and (b) it had no knowledge that would trigger additional notice obligations. Those positions are mutually exclusive, and the judicial admission forecloses the second.

***B. MCTLA § 7193.2(a)(3) Required a Title Search — That Title Search Would Have Identified the Deceased Owner and Required Further Investigation***

Defendants argue that compliance with MCTLA § 7193.2's notice procedures constitutes constitutional adequacy. ECF 30 at 4-5. But § 7193.2(a)(3) itself required the claimant to conduct a title search, review a title insurance policy, or obtain a tax information certificate "identifying interested parties of record." 53 P.S. § 7193.2(a)(3). This is not optional — it is a statutory precondition to the notice process.

A title search of 1721 North Hollywood Street would have revealed exactly what the City's own tax records already showed: that the property was owned by Mary Wilchcombe, who died in 2019. A title search revealing a deceased owner does not end the inquiry — it begins it. Pennsylvania law treats the property of a decedent as passing immediately to heirs by operation of law. 20 Pa.C.S. § 301. A competent title examiner confronted with a deceased record owner is obligated to identify the estate or heirs. The statutory framework that Defendants invoke as satisfying due process is itself an internal refutation of their argument: the statute required a title search that would have revealed a dead owner; that revelation required further steps to identify heirs; those steps were never taken.

Defendants therefore cannot take shelter in § 7193.2 compliance. The statute did not permit the City to stop at mailing to a known-dead person. Statutory compliance required identification of actual interested parties. That did not happen. The constitutional violation and the statutory deficiency are the same: the failure to look beyond a deceased record owner to identify living heirs.

### *C. Pennsylvania Intestacy Law Vested a Constitutional Property Interest in Plaintiff From the Moment of Mary Wilchcombe's Death in 2019*

Defendants assert that because the deed did not name Plaintiff and his Letter of Administration was not issued until November 2025, he had no property interest at the time of the February 2025 sale. ECF 30 at 3. This argument misunderstands Pennsylvania property law at its foundation.

Under 20 Pa.C.S. § 301, title to real property of a decedent passes to the decedent's heirs or devisees immediately at death. The Supreme Court of Pennsylvania has consistently applied this principle: title vests in heirs the instant the decedent dies — not when a will is probated, not when Letters of Administration are issued, and not when heirs formally identify themselves. See In re Estate of Tallarico, 228 A.2d 736, 741 (Pa. 1967). Letters of Administration are a procedural authorization for an administrator to manage estate affairs; they do not create the heir's underlying property interest, which already exists by operation of statute from the moment of death.

Plaintiff's property interest in 1721 North Hollywood Street arose in 2019. He held that interest — recognized and protected by Pennsylvania law — continuously from 2019 through the date of the unconstitutional sale in February 2025. The issuance of formal Letters in November

2025 formalized what was already legally true. It did not create a new interest; it confirmed an existing one.

Under federal constitutional law, a property interest sufficient to trigger due process protection exists wherever state law creates a "legitimate claim of entitlement" to the property. Board of Regents v. Roth, 408 U.S. 564, 577 (1972). Pennsylvania's intestacy statute creates precisely that entitlement. Plaintiff's property interest was protected by the Fourteenth Amendment from 2019 forward, regardless of whether his name appeared on the original deed.

***D. The MCTLA Registration Requirement Cannot Constitutionally Eliminate the Due Process Rights of Heirs Who Cannot Register What They Do Not Yet Know to Register***

Defendants argue that the registration requirement of 53 P.S. § 7193.1 shifts the constitutional burden to Plaintiff — that because he failed to register his interest, the City owed him nothing. ECF 30 at 3-4. This argument is constitutionally untenable for three independent reasons.

First, state statutes cannot override constitutional requirements. U.S. Const. art. VI, cl. 2. The Fourteenth Amendment's due process protections apply regardless of what a state legislature provides. A registration scheme that, as applied, eliminates constitutional notice rights for heirs of deceased property owners cannot satisfy due process. See Tulsa Professional Collection Services, Inc. v. Pope, 485 U.S. 478, 484-85 (1988) (state procedural scheme cannot eliminate constitutional notice rights of known or reasonably ascertainable interested parties).

Second, the requirement is self-defeating as applied here. Section 7193.1 places the burden on "property owners, mortgagees, and lienholders" to register their interests. Mary Wilchcombe

— the registered property owner — died in 2019. A dead person cannot register a successor's interest. Plaintiff, as her heir, held a property interest that arose automatically by operation of law — an interest he did not knowingly acquire, for which he received no government notice, and which he had no reason to register under a statutory scheme of which he was unaware. To hold that the government can extinguish such an interest simply because the heir failed to register it — when the government already knew the registered owner was dead and could have identified the heirs through a title search its own statute required — is to sanction a constitutional bootstrapping.

Third, the Supreme Court's decision in Mennonite Board of Missions v. Adams, 462 U.S. 791, 798-800 (1983), forecloses the argument. In Mennonite, the Court held that even a mortgagee whose interest was recorded in public records — but who had not separately registered with the taxing authority — was constitutionally entitled to actual notice before a tax sale. If a failure to register cannot defeat the constitutional notice right of a mortgagee whose interest appears in the public record, it certainly cannot defeat the right of an heir whose interest arises automatically under state law and is ascertainable from publicly available probate records.

## II. JONES v. FLOWERS IS NOT DISTINGUISHABLE — DEFENDANTS' OWN JUDICIAL ADMISSION THAT THEY KNEW THE OWNER WAS DEAD IS LEGALLY EQUIVALENT TO RETURNED MAIL AND TRIGGERS THE SAME CONSTITUTIONAL DUTY

Defendants argue Jones v. Flowers, 547 U.S. 220 (2006), does not apply for two reasons: the plaintiff in Jones was the deed owner, and in Jones the notice was returned unclaimed rather than going to a dead person. ECF 30 at 5-6. Both distinctions fail.

The constitutional principle of Jones is not limited to cases where certified mail is physically returned to the sender. The Court's holding rests on a functional inquiry: when the government "has reason to believe that its attempt at notice has failed," it must take "additional reasonable steps" to attempt to provide actual notice. 547 U.S. at 225. The question is not whether a piece of mail bounced back — it is whether the government had reason to know its notice would not reach the interested party.

Here, the City had reason to know its notice would fail because it knew the recipient was dead. A government that mails notice to a person it knows died five years ago has every bit as much reason to know the notice will fail as a government that watches its certified mail returned unclaimed. In both situations, the government is aware that its standard procedure has not and cannot reach an interested party. In both situations, the constitutional remedy is the same: additional reasonable steps. The City took none.

As to the deed-owner distinction: Jones' principle applies to "interested parties" in property, not merely to deed holders. The Supreme Court grounded its analysis in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950), which requires notice "reasonably calculated, under all the circumstances, to apprise interested parties" — a standard that encompasses heirs whose interests arise by operation of law. Id. at 314. The Court in Jones did not limit its holding to record title holders. It applied the constitutional notice standard to the specific facts of that case, which happened to involve a record owner, without suggesting the principle was so limited. The constitutional obligation to provide adequate notice to interested parties applies to all persons with a legally protected property interest — including heirs.

Moreover, the fact that notice was not "returned unclaimed" in this case does not mean the City had no reason to question whether notice was received. The City sent a letter addressed to a person it knew, from its own records, had died in 2019. There is no plausible world in which a letter addressed to Mary Wilchcombe at 1721 North Hollywood Street, mailed in April 2024, was received by Mary Wilchcombe or transmitted to her heirs. The City's actual, documented knowledge of the owner's death is a stronger trigger for the Jones duty than the mere fact of returned mail.

## III. LIN-HENDEL v. TURNER CONFIRMS — NOT EXPANDS — THE NARROW SCOPE OF ROOKER-FELDMAN AND DOES NOT BAR PLAINTIFF'S INDEPENDENT CONSTITUTIONAL DAMAGE CLAIMS

### *A. Lin-Hendel Applied Rooker-Feldman to Claims Seeking to Undo a Foreclosure Judgment — Plaintiff Seeks Only Damages for Pre-Judgment Constitutional Violations*

Defendants rely on Lin-Hendel v. Turner, No. 25-1128, 2026 WL 711042 (3d Cir. Mar. 13, 2026), to argue that Rooker-Feldman bars all federal claims arising from tax foreclosure proceedings. ECF 30 at 6-7. This misreads the case. The Third Circuit in Lin-Hendel applied the four-part Great Western Mining test and held that Rooker-Feldman barred claims where the plaintiffs were seeking, through fraud allegations against foreclosure parties, to effectively reverse the foreclosure judgment itself. The Court applied the doctrine because the plaintiffs were complaining of an injury — loss of property — that flowed directly from the foreclosure judgment, and their requested relief would have required the federal court to declare the judgment invalid. Lin-Hendel, 2026 WL 711042, at *3.

That is categorically not what Plaintiff seeks here. Plaintiff does not ask this Court to void the state court's July 2024 sale order or reverse Judge Hall's September 2025 denial of his Motion to Redeem. He seeks money damages under 42 U.S.C. § 1983 for Defendants' pre-deprivation constitutional misconduct — the failure to provide constitutionally adequate notice before the sale, and the taking of property without just compensation. A damages award does not overrule a state court judgment; it compensates for a constitutional injury. Lin-Hendel reaffirms, rather than expands, the principle from Great Western Mining and Exxon Mobil: Rooker-Feldman bars federal claims only where the injury is caused by the state court judgment and the relief would require the federal court to reject that judgment. Neither condition is met here.

***B. Plaintiff Was Not a Party to the State Court Foreclosure Proceedings at the Time the Property Was Sold — Rooker-Feldman Requires State Court Participation***

A fact that Defendants systematically ignore is that Plaintiff was not a party to the Philadelphia Court of Common Pleas foreclosure proceedings at the time the property was sold on February 21, 2025. He intervened on August 18, 2025 — six months after the sale. He was not a "state-court loser" within the meaning of Rooker-Feldman at the time the constitutional injury occurred, because he was not a party to the state court action when it produced the allegedly injurious outcome. Rooker-Feldman bars claims by parties who lost in state court — not by persons who were never afforded the opportunity to participate. See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (doctrine confined to "cases brought by state-court losers"). A person who never received notice of proceedings cannot be characterized as a "loser" in those proceedings.

*C. The 'Inextricably Intertwined' Language Defendants Invoke Was Substantially Limited by Exxon Mobil and Cannot Be Applied to Independent Damages Claims*

Defendants invoke the "inextricably intertwined" formulation from Great Western Mining to argue that Plaintiff's pre-judgment constitutional claims fall within Rooker-Feldman. ECF 30 at 7. But the Third Circuit's Great Western Mining opinion itself warned against overbroad application of this concept. The court explained that a claim is inextricably intertwined with a state court judgment only when the plaintiff seeks a result incompatible with that judgment — not merely when the factual background of the federal claim overlaps with the state court proceedings. Great W. Mining, 615 F.3d at 169-70. Plaintiff's damages claims are not incompatible with any state court judgment. He does not ask that the sale be undone. He asks to be compensated for the constitutional injuries he suffered. Those remedies can coexist with every state court ruling in this case.

**IV. THE CITY'S AFFIRMATIVE INSTITUTIONAL DECISION TO FORECLOSE ON A PROPERTY KNOWN TO BE OWNED BY A DECEASED PERSON — WITHOUT DIRECTING IDENTIFICATION OF LIVING HEIRS — CONSTITUTES DIRECT PARTICIPATION IN THE CONSTITUTIONAL VIOLATION, NOT MERE REFERRAL**

Defendants argue that Garcia and Zwolak's referral of the delinquent tax account to GRB was a routine administrative act insufficient to support § 1983 liability. ECF 30 at 1-2. This characterization distorts what the Complaint actually alleges and what the City's own submissions confirm.

The City's own Memorandum states that Garcia and Zwolak, as Chief Philadelphia City Attorney and Chief Real Estate Attorney respectively, personally made the decision to refer this specific property account to GRB for collection. ECF 19-1 at 4. This was not a blanket, automated referral. It was a specific, individualized decision by named City attorneys to pursue tax collection against a property whose record owner the City's own tax records showed had been dead since 2019. The constitutional violation began at the moment of that referral — when experienced municipal attorneys, with actual knowledge that the record owner was deceased, set in motion a process that would foreseeably culminate in a sale conducted without notice to living interested parties.

Under Third Circuit law, § 1983 personal involvement encompasses conduct by which a state actor is the "moving force" behind a constitutional violation, even where the final act is carried out by another. Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989); Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). The causal chain here is direct and foreseeable: Garcia and Zwolak refer account → GRB pursues foreclosure → Baker provides notice to deceased owner → no living heir is notified → property is sold. That chain begins with Garcia and Zwolak. Under Brower v. County of Inyo, 489 U.S. 593, 596-97 (1989), setting in motion a chain of events that one knows or reasonably should know will cause a constitutional injury establishes the causal nexus for § 1983 liability.

Furthermore, Defendants' argument that Garcia and Zwolak were not GRB's "supervisors" misses the point. Plaintiff does not allege supervisory liability over GRB's day-to-day operations. He alleges that Garcia and Zwolak, exercising City authority, made an affirmative governmental decision — the referral — that was itself the constitutionally infirm act. Choosing to pursue a

foreclosure on a property with a deceased owner, without directing the collection agency to first identify and notify living heirs, is an act by state actors under color of law that foreseeably causes a constitutional deprivation. That is § 1983 liability for direct participation in the initiation of an unconstitutional process.

## V. DEFENDANTS' OWN AUTHORITY — JONES v. FLOWERS — ESTABLISHES THAT STATUTORY COMPLIANCE DOES NOT PER SE SATISFY THE FOURTEENTH AMENDMENT

Defendants cite Jones v. Flowers for the proposition that due process requires only notice "reasonably calculated" to reach interested parties, and that statutory compliance ensures this standard is met. ECF 30 at 5-6. This reading of Jones is exactly backwards. Jones involved a state that had fully complied with its statutory notice requirements — and the Supreme Court held that compliance was constitutionally insufficient. 547 U.S. at 230. The Court's entire analytical project in Jones was to establish that mechanical statutory compliance does not substitute for the constitutional adequacy inquiry. Id. at 225-26 ("We do not think that a person who actually desired to inform a real property owner of an impending tax sale . . . would do nothing when a certified letter sent to the owner is returned unclaimed.").

Defendants cannot invoke Jones for the principle that statutory compliance satisfies due process when Jones expressly held the opposite. The constitutional standard — notice reasonably calculated to reach the actual interested party — is not determined by checking procedural boxes. It is determined by whether the government's chosen procedure was likely to actually inform persons whose property was at stake. Mailing to a confirmed-dead person is not reasonably

calculated to reach any person. It satisfies no constitutional standard regardless of what the statute says.

## VI. DEFENDANTS CANNOT USE THE SIX-MONTH REMEDIAL WINDOW AS A SHIELD WHEN PLAINTIFF HAD NO NOTICE THAT WOULD HAVE ALLOWED HIM TO INVOKE IT

In footnote 7 of their Reply, Defendants note that the MCTLA provides a six-month window after a sheriff's sale to contest the sale for lack of notice, and that Plaintiff never filed a Motion to Set Aside the Sale. ECF 30 at 5 n.7. This observation, while technically accurate, cuts entirely in Plaintiff's favor.

Plaintiff could not invoke a remedial window he did not know existed because he had not been notified of the sale. The constitutional purpose of the pre-deprivation notice requirement is precisely to enable a property owner to take timely action before or shortly after a deprivation occurs. When that notice fails, the post-deprivation remedial window is effectively inaccessible to the person who needed it most. The existence of a post-deprivation remedy does not cure a pre-deprivation notice failure when the remedy's availability depends on awareness of the deprivation — awareness that the defective notice was designed to provide. See Parratt v. Taylor, 451 U.S. 527, 541 (1981) (post-deprivation remedies adequate only for random, unauthorized deprivations — not systematic government action).

Moreover, Plaintiff acted with extraordinary diligence once he learned of the proceedings. He filed his Petition to Intervene on August 18, 2025 — within the six-month window from the February 21, 2025 sale. He then pursued his Motion to Redeem within the same window. The fact

that he pursued redemption rather than a motion to set aside does not constitute a forfeiture of his federal constitutional claims, which arise independently of state court procedures.

## VII. DEFENDANTS HAVE NOT AND CANNOT ESTABLISH THAT AMENDMENT IS FUTILE — DISMISSAL WITH PREJUDICE IS LEGALLY IMPERMISSIBLE

Defendants assert in a footnote — without analysis, without case citation, without any development of the argument — that leave to amend would be futile. ECF 30 at 3 n.3. This is legally insufficient to establish futility. Under Third Circuit law, the party opposing amendment bears the burden of demonstrating that amendment would be futile, meaning the proposed amended complaint would still not survive a motion to dismiss. Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000). A bare assertion in a footnote does not meet this burden.

An Amended Complaint would not be futile. Plaintiff can plead with additional specificity: (a) the legal basis for his property interest under 20 Pa.C.S. § 301 arising from the 2019 death of Mary Wilchcombe; (b) the publicly accessible Pennsylvania probate records from which his identity as heir was ascertainable; (c) the City's own documented knowledge of Mary Wilchcombe's death as evidenced by its tax records and as admitted in ECF 19-1; (d) the specific § 7193.2(a)(3) title search obligation and its implications for identification of heirs; (e) additional facts supporting Garcia and Zwolak's knowledge and direct decision-making; (f) a Monell policy and custom claim based on the City's systematic practice of pursuing foreclosures on properties with deceased record owners without directing identification of living heirs; and (g) the specific facts supporting his Takings claim as a completed physical taking under Knick.

None of these amendments would be futile. All address the specific deficiencies Defendants identify. Dismissal with prejudice is reversible error when a pro se plaintiff has not been given the opportunity to replead. Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir. 2008). Grayson v. Mayview State Hospital, 293 F.3d 103, 114 (3d Cir. 2002).

## CONCLUSION

Defendants' Reply raises no argument that withstands scrutiny. Their most powerful new contention — that Plaintiff lacked a property interest because his name was not on the deed — is eviscerated by their own judicial admission that the City knew the record owner was dead in 2019. The MCTLA's own title search requirement would have compelled identification of living heirs. Pennsylvania law vested Plaintiff's property interest at the moment of his predecessor's death. The constitutional notice obligation follows the property interest, not the deed registration. Lin-Hendel does not expand Rooker-Feldman to bar independent damages claims. Garcia and Zwolak's affirmative referral decision was the initiating act of an unconstitutional process. Statutory compliance does not equal constitutional adequacy. Leave to amend is required and is not futile.

Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety, or in the alternative grant leave to file an Amended Complaint without prejudice.

Respectfully submitted,

[signature]

BRANDON IRA WILCHCOMBE

Pro Se

## CERTIFICATE OF SERVICE

I, Brandon Ira Wilchcombe, Pro Se, hereby certify that on the date set forth below, that I caused a true and correct copy of the foregoing MOTION to be served upon the parties listed below via regular mail:

John P. Gonzales, Esq.
MARSHALL DENNEHEY WARNER
COLEMAN AND GOGGIN, P.C.
200 Market Street, Suite 2300
Philadelphia, PA 19103

JANE C. SCHLEICHTER, Esq.,
GRB LAW
1420 Spruce Street
Philadelphia, PA 19102

Connor B. DeFilippis, Esq.,
TROUTMAN PEPPER LOCKE
3900 Two Logan Square
Eighteenth and Arch Street
Philadelphia, PA 19103

Dated: April 23, 2026

Brandon Ira Wilchcombe
Pro Se