**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BRANDON IRA WILCHCOMBE,**<br>**Plaintiff,**<br><br>**v.**<br><br>**CITY OF PHILADELPHIA,**<br>**RENEE GARCIA, Individually and in her Official Capacity as the Chief of Philadelphia City Attorney,**<br>**JAMES ZWOLAK, Individually and in his Official Capacity as Chief Real Estate, Attorney for the City of Philadelphia,**<br>**GOEHRING, RUTTER & BOEHM,**<br>**GEORGE V. BAKER, JR.,**<br>**Rachel Bilal, Individually and in her Official Capacity as the Sheriff of Philadelphia County,**<br>**PHILADELPHIA COUNTY SHERIFF'S OFFICE,**<br>**BID4ASSETS, INC. and**<br>**TLH TD PROPERTIES, LLC,**<br>**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 26-1331** |

**MEMORANDUM**

**HODGE, J.** **August 20, 2026**

*Pro se* Plaintiff Brandon Ira Wilchcombe brings this action following the foreclosure and sale of real property located at 1721 North Hollywood Street, Philadelphia, Pennsylvania. In his Complaint, Plaintiff brings the following claims: takings in violation of the Fifth Amendment (Count I); Fourteenth Amendment due process violation for lack of notice (Count II); conspiracy to deprive Plaintiff of due process (Count III); and conspiracy to delay or deprive homeowners of unused proceeds from tax foreclosure sales (Count IV). (*See* ECF No. 1.) Before the Court are the motions to dismiss the Complaint by Defendant George V. Baker, Jr. ("Baker") (ECF No. 11); Defendant Goehring, Rutter, & Boehm ("GRB") (ECF No. 12); Rochelle Bilal ("Bilal"), the City

of Philadelphia (the "City"), Renee Garcia ("Garcia"), Philadelphia County Sheriff's Office ("Sheriff's Office"), and James Zwolak ("Zwolak") (collectively "City Defendants") (ECF No. 20); Bid4Assets, Inc. ("Bid4Assets") (ECF No. 26); TLH TD Properties LLC ("TLH") (ECF No. 50); Plaintiff's oppositions to those Motions to Dismiss (ECF Nos. 17, 23, 33, and 57); Defendants' replies in support (ECF Nos. 30, 37); and Plaintiff's surreplies thereto (ECF Nos. 36, 39). Also before the Court are Plaintiff's Motions for Leave to File Amended Complaints (ECF Nos. 38, 45) and the oppositions thereto (ECF Nos. 42, 44). For the following reasons, Plaintiff's Motions for Leave to File are denied, and Defendants' Motions to Dismiss are granted.

## I. BACKGROUND

### A. Factual Background[1]

In 1961, Arthur and Mary Wilchcombe were conveyed title to real property located at 1721 North Hollywood Street, Philadelphia, Pennsylvania (the "Property"). (ECF No. 1 ¶ 6.) They fulfilled their tax obligations as owners of the Property throughout their lives until the death of the surviving owner, Mary Wilchcombe, on July 22, 2019. (*Id.*) The Property was assessed to have a value of $118,000. (*Id.* ¶ 7.)[2] Plaintiff is the grandson, sole heir, and administrator of the estate of Arthur and Mary Wilchcombe. (*Id.* ¶ 3.)

On September 3, 2025, the Philadelphia Department of Revenue published a realty tax report which shows that after the death of Mary Wilchcombe, property taxes accumulated on the Property. (*Id.* ¶ 7.)[3] By tax year 2025, the unpaid real estate taxes on the Property, including interest, penalty, and other charges from the City, totaled $10,287.54. (*Id.*)

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.
[2] Plaintiff does not allege when this assessment was made.
[3] Curiously, Plaintiff contends in his surreply to the City Defendants' Motion to Dismiss that this assertion is not an allegation by Plaintiff and thus should constitute a judicial admission by City

In April 2024, pursuant to City policy, Garcia and Zwolak referred the Property's delinquent taxes to the collections agency GRB. (*Id.* ¶ 8.) On April 3, 2024, GRB initiated a real estate tax collection against the Property. (*Id.* ¶ 9.) GRB assigned the collection task to Baker. (*Id.* ¶ 10.) Plaintiff alleges that he was the sole heir of the property, and neither GRB nor Baker took proper steps to provide him notice of the tax collection against the Property. (*Id.* ¶¶ 9, 11.) Baker filed an affidavit in the Philadelphia Court of Common Pleas asserting that the Philadelphia Writ Services had served notice of the tax foreclosure action by posting the notice on the front door of the Property. (ECF No. 1-1 at 8–9.) Baker also sent notice by certified mail to the Property, directed to "Arthur E. Wilchcombe with notice to heirs & assigns," "Mary Wilchcombe with notice to heirs & assigns" and "current occupant/tenant." (*Id.* at 6–7.)

On July 15, 2024, the Philadelphia Court of Common Pleas issued an order for the Property to be sold by the Sheriff's Office. (ECF No. 1 ¶ 16; *City of Philadelphia v. Arthur E. Wilchcombe*, 2404T0017 (the "Court of Common Pleas Action").) The Sheriff's Office used Bid4Assets' web platform to conduct the sale. (ECF No. 1 ¶¶ 18, 21.) The Property was sold to TLH for $47,800.00. (*Id.* ¶ 33.) The Sheriff acknowledged TLH as the legal owner of the Property on July 2, 2025. (*Id.* ¶ 34; ECF No. 1-1 at 14.)

Plaintiff learned of the foreclosure and sale of the Property in or around June 2025, when he visited the Property and discovered the locks had been changed. (ECF No. 1 ¶¶ 29–30.) Plaintiff moved to intervene in the Court of Common Pleas Action, which the court granted. (*Id.* ¶ 35.) Plaintiff moved to redeem the Property, which the Court of Common Pleas denied on September 3, 2025. (*Id.* ¶ 36.)

---

Defendants. (ECF No. 36 at 2.) The Court rejects this argument as the statement is, in fact, in his Complaint.

In its order denying Plaintiff's motion to redeem, the court ordered the sheriff to "prepare a distribution sheet as required by the Rules of Civil Procedure." (*Id.* ¶ 36; ECF No. 1-1 at 21.) On October 14, 2025, the sheriff published this schedule which listed a sum of $25,972.76 as "unused proceeds." (ECF No. 1 ¶ 37; ECF No. 1-1 at 22.) On November 12, 2025, Plaintiff submitted the requisite forms and documentation to receive the $25,972.76 but was told by the Sheriff's Office that it may require up to one year to determine what portion of those funds are to be distributed to him. (ECF No. 1 ¶ 38.) Plaintiff alleges that the Sheriff's Office has knowingly and intentionally failed to distribute similarly due "unused proceeds" to homeowners. (*Id.* ¶ 39.)

### B. Procedural History

Plaintiff filed his Complaint in this Court on February 26, 2026. (ECF No. 1.) All Defendants have moved to dismiss the Complaint. (ECF Nos. 11, 12, 21, 26, 50.) Concurrent with briefing on the Motions to Dismiss, Plaintiff filed two motions to amend his complaint. (ECF Nos. 38, 45), which are opposed (ECF Nos. 42, 44).

## II. MOTION FOR LEAVE TO AMEND PLEADINGS

Plaintiff's motions for leave to file amended complaints are governed by Federal Rule of Civil Procedure 15(a)(2). Under this rule, court leave is required for a party to amend its pleadings, which a court "should freely give when justice so requires." Fed. R. Civ. P. 15(a)(2).[4] The Court has discretion on whether to grant leave to amend. *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008). A court may deny a motion for leave to amend if (1) amendment would be futile; (2) the moving party demonstrated undue delay, bad faith, or dilatory motives; (3) amendment would prejudice the non-moving party; or (4) the moving party was put on notice of

[4] A party may also amend its pleadings with the opposing party's written consent. Fed. R. Civ. P. 15(a)(2). Here, no Defendants have consented to the amendment.

deficiencies in its pleadings but chose not to resolve them. *United States ex rel. Schumann v. AstraZeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014). The Court's discretion under Rule 15 is based on the animating principle of making "pleadings a means to achieve an orderly and fair administration of justice." *Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 227 (1964).

The Court finds that the two proposed amendments would be futile. The amended complaints fail based on the same analysis below of the original complaint as the amendments did not remedy the below deficiencies, or those deficiencies were not capable of remedy. The amended pleadings revise the relief sought to remove requests to quiet title of the Property. However, that revision does not change the Court's *Rooker-Feldman* analysis below. *See McAllister v. Allegheny Cnty. Fam. Div.*, 128 F. App'x 901, 902 (3d Cir. 2005) (noting that the form of relief is not dispositive to the application of the *Rooker-Feldman* Doctrine). Plaintiff's proposed second amended complaint includes two additional claims, one of which involves conspiracy allegations which fail to state a claim for the reasons stated *infra*.

Moreover, in the interest of an orderly and fair administration of justice, the Court finds it more efficient to allow Plaintiff to amend his complaint following this Court's determination on the pending Motions to Dismiss. Thus, Plaintiff may file a first amended complaint to replead claims dismissed without prejudice and the additional claims Plaintiff sought to add in his proposed second amended complaint.

## III. MOTION TO DISMISS[5]

### A. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012). Where a Rule 12(b)(1) motion is filed prior to an answer, it will be considered a facial challenge to jurisdiction, i.e., that the complaint does not allege sufficient grounds to establish subject matter jurisdiction. *See Hendrick v. Aramark Corp.*, 263 F. Supp. 3d 514, 517 (E.D. Pa. 2017). When considering a facial challenge, a court must apply the same standard of review as it would for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Id.*

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, a complaint must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. at 678 (citation omitted). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

---

[5] City Defendants argue that punitive damages against the City are unavailable, and that the Sheriff's Office is not a legal entity capable of being sued. (ECF No. 20 at 8.) Plaintiff concedes that punitive damages are not available against the City. (ECF No. 23 at 11.) He also concedes that the Sheriff's Office lacks independent corporate existence and thus redirects his claims against it to the City. (*Id.*) The Sheriff's Office is therefore dismissed with prejudice from this action, and Plaintiff cannot seek punitive damages from the City.

Applying the principles of *Iqbal* and *Twombly*, the Third Circuit has articulated a three-part analysis to determine whether a complaint will survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). This three-prong inquiry involves the following: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

When a plaintiff is proceeding *pro se*, the court must liberally construe the litigant's pleadings. *Higgs v. Att'y Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011). The Court shall "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina*, 704 F.3d 239, 244 (3d Cir. 2013). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* at 245.

**B. Discussion**

**1. *Rooker-Feldman* Doctrine**

Defendants argue that the *Rooker-Feldman* Doctrine bars Plaintiff's claims because Plaintiff lost in the Court of Common Pleas Action prior to filing this action, and he is seeking to have this Court review and reject the foreclosure judgment. Plaintiff argues that his federal constitutional claims raise independent constitutional violations that do not require review of any state court judgment.

The *Rooker-Feldman* Doctrine deprives "inferior" federal district courts of jurisdiction over claims that are essentially appeals of state court judgments. *See Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010); *In re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). "[F]our requirements . . . must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-

court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining*, 615 F.3d at 166 (citation modified).

*Great Western Mining* highlighted the narrow application of *Rooker-Feldman*. While courts previously applied *Rooker-Feldman* when the state and federal suits were "inextricably intertwined," the Third Circuit has stated that this phrase "has no independent content" following *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). *Id.* at 169–70; *see also T.M. v. Univ. of Md. Med. Sys. Corp.*, 146 S. Ct. 1739, 1747–48 (2026) ("In the years since *Rooker* and *Feldman*, this Court has refused to expand the *Rooker-Feldman* doctrine.").

In determining whether *Rooker-Feldman* applies, a "critical task is [] to identify those federal suits that profess to complain of injury by a third party, but actually complain of injury produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Great W. Mining*, 615 F.3d at 167 (internal citation omitted). *Rooker-Feldman* bars claims of injury based on state court judgments, but does not bar claims of injury caused by the defendant's actions. *Id.* The Court must therefore look specifically at the injury identified, and determine whether the source of the injury is alleged to be caused by Defendants or if it stems from the state court judgment.

In Count I, Plaintiff asserts that the City and TLH violated the Fifth and Fourteenth Amendments by depriving him of $118,000 of equity in the Property. If this Court were to consider whether Defendants' actions constituted a taking under the Fifth Amendment, it would need to reject the state court's order. Plaintiff sought redemption in the Court of Common Pleas Action, and informed the state court that he was unaware that the sale occurred. The state court granted Plaintiff's motion to intervene, considered arguments raised by Plaintiff and Defendants, and

denied Plaintiff's motion to redeem the property. Plaintiff's deprivation of the $118,000 of equity in the Property was thus caused by the state court judgment. More crucially, the alleged taking was an injury "produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Great W. Mining*, 615 F.3d at 167; *see also Ituah v. City of Philadelphia*, No. CV 16-05772, 2017 WL 2079888, at *6 (E.D. Pa. May 15, 2017) (finding a claim barred under *Rooker-Feldman* when the injury could not have happened absent the state court judgment).[6] Count I is therefore barred under *Rooker-Feldman*, and thus this Court lacks jurisdiction. Count I is dismissed with prejudice.[7]

Counts II and III allege Fourteenth Amendment due process violations for failure to provide notice and conspiracy to violate Plaintiff's due process rights. These claims are similar to the claims addressed in *Great Western Mining*. The plaintiff in that case brought a section 1983 claim alleging deprivation of procedural and substantive due process by attorneys in a state court proceeding, and further alleging the state court decisions were corrupted by improper influence of the defendants. 615 F.3d at 162. The Third Circuit found this claim was not barred by *Rooker-*

[6] Plaintiff cites *Jones v. Flowers*, 547 U.S. 220 (2006) in arguing that *Rooker-Feldman* does not bar his claims. (*See* ECF No. 23 at 5 ("If Rooker-Feldman categorically barred federal jurisdiction over tax-sale due process claims, *Jones v. Flowers* could not have been decided as it was.").) However, in *Jones*, the Supreme Court granted certiorari to consider the Arkansas Supreme Court's decision. 547 U.S. at 225. *Rooker-Feldman* prohibits federal district courts from acting as a court of appeals for state court judgments—but *Jones* is precisely the type of federal appellate review of state court judgments that is allowed. *See* 28 U.S.C. § 1257.

[7] Plaintiff raises in his opposition that the $25,972.26 in surplus proceeds is an independent takings claim. (ECF No. 23 at 7.) Such a claim was not made in Plaintiff's Complaint, and so Defendants were not given fair notice of this assertion. Federal Rule of Civil Procedure 8 requires a complaint to provide defendants with fair notice of what the claim is and upon what grounds it is based. *See Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019). The Court does not consider the $25,972.26 in surplus proceeds as a separate takings claim as it was not asserted in the Plaintiff's Complaint.

*Feldman* because the state court judgments are not themselves the cause of Plaintiff's alleged injuries. *Id.* at 173. Counts II and III here are similarly not barred by *Rooker-Feldman*.

Count IV relates to the "unused proceeds" to which Plaintiff asserts he is entitled. There is no state court judgment Plaintiff complains of that finds he is not entitled to such funds. Rather, the distribution of these funds came about after the state court judgment. Thus, consideration of this claim does not invite this Court to review and reject the state court judgment, and so it is not barred under *Rooker-Feldman*.

### 2. Tax Injunction Act

Defendants Baker and GRB argue that this Court is deprived of subject matter jurisdiction under the Tax Injunction Act, 28 U.S.C. § 1341, which states:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

Defendants cite *Baldwin v. Linebarger, Goggan, Blair & Sampson, LLP*, No. CIV.A. 12-743, 2012 WL 3638677 (E.D. Pa. Aug. 24, 2012) and argue that similarly here, Plaintiff reprises arguments already litigated or that could have been litigated in state court.[8]

*Baldwin* is distinguishable from this present case. The plaintiff in *Baldwin* sought tax-exemption status of his property because it was being used for religious purposes, which was not granted. 2012 WL 3638677, at *1. The property subsequently entered sheriff's sale proceedings

---

[8] The Court notes that Plaintiff cites to cases in response to this argument that do not exist. (*See, e.g.*, ECF No. 17 at 2.) Plaintiff is instructed to abide by this Court's Policies and Procedures concerning Generative Artificial Intelligence usage in connection with his filings. *See* Judge Hodge Judicial Policies & Procedures, Section I(G)(3). Moreover, Plaintiff must abide by Federal Rule of Civil Procedure 11(b), which requires an "unrepresented party [to] certify[y] that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that all claims and legal contentions are "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Failure to comply with these directives may result in sanctions.

to satisfy the unpaid taxes. *Id.* The plaintiff received ample notice throughout the state court proceedings of the forthcoming sale of the property. *Id.* at *1–2. His federal complaint alleged that his property should have been deemed exempt from property taxes. *Id.* at *2. Plaintiff in this instance is not challenging the assessment of taxes owed on the Property, nor is he even directly challenging that sheriff's sale proceedings were commenced. The Tax Injunction Act therefore does not bar his claims.

### 3. Fourteenth Amendment Claim (Count II)

Count II asserts that Defendants Baker, GRB, the City, Garcia, and Zwolak violated Plaintiff's Fourteenth Amendment rights by failing to provide proper notice of the sale of the Property. The Court understands this claim to be brought pursuant to 42 U.S.C. § 1983. *See Nieves v. Bartlett*, 587 U.S. 391, 396 (2019) ("[Section 1983] provides a cause of action for state deprivations of federal rights.").

A plaintiff alleging a § 1983 claim must allege the defendant's personal involvement in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). There is no *respondeat superior* or supervisor liability under § 1983. Rather, a municipality may only be liable under § 1983 based on a policy, custom, or failure to train. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978); *City of Canton v. Harris*, 489 U.S. 378, 387–88 (1989). A supervisor may be liable under § 1983 if they gave directions which they knew or should have known would cause others to deprive the plaintiff of their constitutional rights. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).[9] Because Plaintiff has failed to plead any personal involvement of Garcia, Zwolak, or GRB in the alleged due process violation, or any direction they gave which was the

---

[9] Plaintiff cites a quotation that does not exist in *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010). (ECF No. 23 at 10.) Moreover, *Santiago* does not support the purported quotation that merely setting a series of acts into motion could lead to liability under § 1983.

proximate cause of the alleged violation, Count II fails as to Garcia, Zwolak, and GRB. Similarly, because Plaintiff fails to allege a policy, custom, or failure to train as to the City, Count II fails as to the City. Count II is dismissed without prejudice as to the City, Garcia, Zwolak, and GRB.

The analysis of Count II proceeds as to Baker. The Court understands Plaintiff to allege a pre-deprivation due process violation because he did not receive notice prior to the sale of the Property. The most thorough post-deprivation proceedings cannot undo the failure to provide pre-deprivation proceedings, unless there is no requirement to provide pre-deprivation proceedings. *See Alvin v. Suzuki*, 227 F.3d 107, 120 (3d Cir. 2000). No Defendants assert they were not requirement to provide a pre-deprivation process; rather, they argue that Plaintiff's claim fails as a matter of law because notice of the impending sale satisfied the requirements of due process.

On its face, Plaintiff has sufficiently pleaded in his Complaint a property interest. While he had not registered his interest under 53 P.S. § 7193.1,[10] Defendants have not identified any statute or case law supporting this registration as a requirement for acquiring a property interest within the meaning of the Fourteenth Amendment. Moreover, the Supreme Court of Pennsylvania has considered the due process requirements of notice to property heirs of a tax sale. *See Herder Spring Hunting Club v. Keller*, 143 A.3d 358, 375–76 (Pa. 2016).

Actual notice is not required to satisfy due process before the government takes a property. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action

[10] While Plaintiff asserts a "constitutional CATCH-22" (ECF No. 17 at 3) of being required to register a property interest while having not received notice, his crafted colloquialism is misplaced. Section 7193.1 does not require a person to receive notice of a sheriff's sale in order to register their property interest.

and afford them an opportunity to present their objections." *Id.* (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

The Pennsylvania Municipal Claims and Tax Liens Act ("PMCTLA"), 53 P.S. § 7101 *et seq.*, defines the required notice prior to a sheriff's sale. Under the PMCTLA, notice required for a sale is as follows:

> (1) By posting a true and correct copy of the petition and rule on the most public part of the property;
> (2) By mailing by first class mail to the address registered by any interested party pursuant to section 39.1 of this act a true and correct copy of the petition and rule; and
> (3) By reviewing a title search, title insurance policy or tax information certificate that identifies interested parties of record who have not registered their addresses pursuant to section 39.1 of this act, the claimant shall mail by first class mail and either by certified mail, return receipt requested, or by registered mail to such addresses as appear on the respective records relating to the premises a true and correct copy of the petition and rule.

53 P.S. § 7193.2(a).

Notice was sent by certified mail to the Property, directed to "Arthur E. Wilchcombe with notice to heirs & assigns," "Mary Wilchcombe with notice to heirs & assigns" and "current occupant/tenant." (ECF No. 1-1 at 6–7.) Notice was also posted on the front door of the Property in May 2024. (*Id.* at 8–9.)

While it is not clear what search was conducted under § 7193.2(a)(3) to identify interested parties, Plaintiff has alleged no facts suggesting that a search would have identified him. Thus, he fails to state a plausible claim that notice was not reasonably calculated. Even if Baker was aware that the property owners were deceased, the notice given was calculated to reach anyone living at the Property ("current occupant/tenant") or anyone who walked past the Property via front door posting.

While Plaintiff asserts and attempts to rely on *Jones v. Flowers*, *Jones* does not save Plaintiff's claim. In that case, two letters sent to the property owners, which were returned

"unclaimed," were the only notice provided. 547 U.S. at 224–25. That fact distinguished *Jones* from prior cases where the Supreme Court deemed notice constitutionally sufficient if it was reasonably calculated to reach the intended recipient. *Id.* at 226–27. Here, there are no allegations that the certified mail sent to the Property was returned unclaimed, nor that Baker was aware that notice had failed. Count II is therefore dismissed without prejudice.

**4. Conspiracy Claims (Counts III and IV)**

Counts III and IV both allege conspiracy. Specifically, Count III alleges a conspiracy to deprive Plaintiff of due process through the tax foreclosure proceedings and judicial sale by Defendants the City, Garcia, Zwolak, Bilal, and Bid4Assets. Count IV alleges a conspiracy to delay or deprive homeowners of unused proceeds by Defendants the Sheriff's Office,[11] Bilal, and Bid4Assets. The Court understands based on Plaintiff's briefing (*e.g.*, ECF No. 33) that Plaintiff seeks to assert a conspiracy under § 1983 for violation of his rights under the United States Constitution.

To allege a § 1983 conspiracy, Plaintiff must claim that persons acting under the color of law "reached an understanding" to deprive him of his constitutional rights. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 293–94 (3d Cir. 2018). Such a conspiracy can be alleged through direct or circumstantial evidence. *Id.* at 295. "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy." *Rippy v. Phila. Dep't of Pub. Health*, No. 19-1839, 2019 WL 4849439, at *11 (E.D. Pa. Sept. 30, 2019) (internal citation omitted). Plaintiff's claims

[11] As noted above, Plaintiff has withdrawn claims against the Sheriff's Office and intends to replead those claims against the City.

necessarily fail because he does not plead that the Defendants "reached an understanding" to deprive him of his due process rights or of unused proceeds.[12]

While Plaintiff asserts that he has pleaded a conspiracy "under the pro se standard" (ECF No. 23 at 12), his *pro se* status does not allow his Complaint to fail to state sufficient facts on which he bases his claim. Rather, as noted above, the Court must liberally construe his Complaint by applying the relevant legal principle, but he must still allege sufficient facts. *See Mala v. Crown Bay Marina*, 704 F.3d 239, 245 (3d Cir. 2013).

Plaintiff asserts that Count IV should be understood as a *Monell* liability claim. (ECF No. 23 at 13.) As Plaintiff has not alleged the requisite *Monell* allegations, the claim fails. Plaintiff will be granted leave to replead this claim as one for *Monell* liability.

## IV. CONCLUSION

For the foregoing reasons, the Motions for Leave to File Amended Complaints are denied without prejudice, and the Motions to Dismiss are granted. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**

[12] Additionally, Bid4Assets argues that these claims cannot be brought against it because it is not acting under the color of law. However, liability would attach if a private party conspired with a state actor. *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980).