2026 OCT 28 PM2:21
USDC-EDPA REC'D CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRANDON IRA WILCHCOMBE,<br>Plaintiff,<br>v.<br>CITY OF PHILADELPHIA;<br>GOEHRING, RUTTER & BOEHM;<br>GEORGE V. BAKER, JR.; and<br>ROCHELLE BILAL, in her individual capacity,<br>Defendants. | CIVIL ACTION NO. 2:26-cv-01331-KBH<br>JURY TRIAL DEMANDED |

**SECOND AMENDED COMPLAINT**

## I. NATURE OF THE ACTION

1. This is a civil rights action under 42 U.S.C. § 1983 for money damages. Plaintiff Brandon Ira Wilchcombe is the grandson and sole heir of Arthur E. Wilchcombe and Mary Wilchcombe, the record owners of 1721 North Hollywood Street, Philadelphia, Pennsylvania 19121 (the "Property"). He alleges that Defendants caused the Property to be foreclosed and sold in a tax-sale proceeding without notice reasonably calculated to reach any person with an interest in it, although Defendants knew both record owners were dead, and that the Philadelphia Sheriff's Office then delayed distributing the surplus proceeds of the sale, all in violation of the Due Process Clause of the Fourteenth Amendment.

2. This pleading follows the Court's Memorandum and Order of August 20, 2026 (ECF 60, 61). Consistent with that ruling, Plaintiff does not replead the takings claim (former Count I, dismissed with prejudice), does not replead the conspiracy claims (former Counts III and IV), and does not name Renee Garcia, James Zwolak, Bid4Assets, Inc., TLH TD Properties, LLC, or the Philadelphia County Sheriff's Office as defendants.

## II. JURISDICTION AND VENUE

3. The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because Plaintiff's claims arise under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

4. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to the claims occurred in Philadelphia, Pennsylvania, and Defendants reside or do business in this District.

## III. PARTIES

5. Plaintiff Brandon Ira Wilchcombe is the grandson and sole heir of Arthur E. Wilchcombe and Mary Wilchcombe, both deceased. Letters of Administration were issued to Plaintiff on November 6, 2025 (Estate No. A4634-2025) for the Estate of Mary Wilchcombe who survived Arthur E. Wilchcombe. A copy was filed with the First Amended Complaint (ECF 62, App. A).

6. Defendant City of Philadelphia (the "City") is a municipal corporation. It collects delinquent real estate taxes through its Law Department and Department of Revenue and, in this case, through its retained collection counsel, Goehring, Rutter & Boehm. The Philadelphia County Sheriff's Office conducts the sheriff's sales that result from those proceedings and, as Plaintiff previously stated and the Court recorded, is not separately suable; claims concerning it lie against the City. ECF 60 at 6 n.5.

7. Defendant Goehring, Rutter & Boehm ("GRB") is a law firm located at 1601 Cherry Street, Philadelphia, Pennsylvania. At all relevant times GRB acted as counsel for the City in prosecuting the City's delinquent-tax claim against the Property, and thereby acted under color of state law.

8. Defendant George V. Baker, Jr. ("Baker") is an attorney employed by GRB. GRB assigned the Property's collection to Baker, and Baker acted under color of state law in prosecuting the City's claim. He is sued in his individual capacity.

9. Defendant Rochelle Bilal ("Bilal") is the elected Sheriff of Philadelphia County. She is the final policymaker for the Sheriff's Office's conduct of sheriff's sales, including the content of the Conditions of Sheriff Sale and the filing and payment of schedules of distribution. She is sued in her individual capacity.

## IV. FACTS

### A. The Property and its owners

10. On June 2, 1961, Arthur E. Wilchcombe and Mary Wilchcombe, husband and wife, were conveyed the Property. They paid their taxes as owners until the death of the surviving owner, Mary Wilchcombe, on July 22, 2019. Arthur E. Wilchcombe died on November 15, 1996.

11. Plaintiff is the grandson and sole heir of Arthur and Mary Wilchcombe. Under Pennsylvania's intestacy law, title to the Property passed to Plaintiff on the death of the surviving owner. No estate was opened for either owner before November 6, 2025.

12. Plaintiff kept valuable personal property at the Property and visited it at least once or twice every 60-90 days. The property was briefly occupied by family after the death of Mary Wilchcombe July 22nd, 2019.

13. The City assessed the Property at $118,000. Unpaid real estate taxes, with interest, penalty, and charges, totaled $10,287.54 as of the 2025 tax year. ECF 62-2 at 2 states that the Petition covered tax years 2010 through 2024 but it is important to note that the tax delinquency years only extended from 2019 through 2024.

**B. The tax foreclosure and sheriff's sale**

14. In or about April 2024, the City, acting through its Law Department, referred the delinquent taxes on the Property to GRB for collection. On April 3, 2024, GRB, as the City's counsel, filed a Petition for Rule to Show Cause Why Property Should Not Be Sold Free and Clear in the Court of Common Pleas of Philadelphia County, *City of Philadelphia v. Arthur E. Wilchcombe, et al.*, April Term 2024, No. T0017 (2404T0017). The Petition named only Arthur E. Wilchcombe and Mary Wilchcombe as respondents.

15. GRB assigned the matter to Baker.

16. The notice served by mail was captioned "ARTHUR E. WILCHCOMBE WITH NOTICE TO HEIRS & ASSIGNS" and "MARY WILCHCOMBE WITH NOTICE TO HEIRS & ASSIGNS." It was also addressed to "current occupant/tenant." ECF 60 at 3, 13. Captioning the notice in this way shows that Baker and GRB knew both record owners were dead.

17. GRB has since stated in this case that the "With Notice to Heirs & Assigns" language "is used in all cases for mail service to all individual record and registered owners." ECF 66-2 at 7. On information and belief, this describes GRB's uniform practice in City tax-foreclosure cases: the same template is mailed to the record owner at the Property whether or not the owner is alive, and no further step is taken to find heirs.

18. The Tax Information Certificate on which GRB and the City relied is dated July 3, 2023, about nine months before the Petition was filed on April 3, 2024. It identified Arthur and Mary Wilchcombe as record owners and reported no open estate for either. ECF 66-2 at 6–7 & Ex. B.

19. On information and belief, no updated title search, estate search, or other inquiry to identify Mary Wilchcombe's heirs was made between July 3, 2023 and the filing of the Petition, or at any later time before the sale.

20. A reasonable inquiry would have identified Plaintiff as a person interested in the Property because Plaintiff has extensive prior contacts with City Offices and is a salaried City Employee in the Office of City Council.

21. According to the affidavits Baker filed, the Petition and Rule were mailed to the Property by regular and certified mail on April 19, 2024. ECF 66-2 at 2.

22. Baker filed his Affidavit of Service in the Court of Common Pleas on May 23, 2024. The certified-mail return receipt attached to it does not show whether anyone accepted the letter, and it bears no signature or printed name of a recipient. From the face of his own filing, Baker therefore knew that delivery of the certified mailing was unconfirmed. He took no further step to locate or notify anyone with an interest in the Property.

23. On June 1, 2024, Philadelphia Writ Service filed an affidavit stating that it posted the notice on the front door of the Property on May 4, 2024. Plaintiff alleges that the posting did not occur because Plaintiff visited the Property in June 2024 and did not observe any such posting.

24. At the time of the mailing and posting, the Property was unoccupied, and no tenant or occupant lived there to receive the mailing or see a posting. Defendants knew or had reason to know this because City records showing the Property vacant with no water service.

25. Notice mailed to two people Defendants knew were dead, at a Property they knew or had reason to know was unoccupied, with unconfirmed delivery and a posting that did not occur, was not reasonably calculated to reach any person with an interest in the Property, including Plaintiff.

26. On or about July 15th, 2024, the Court of Common Pleas ordered that the Property be sold by the Sheriff.

27. On January 14, 2025, Baker filed an Affidavit of Service stating that the decree and notice of the sheriff's sale set for February 21, 2025 had been served on Mary and Arthur Wilchcombe by regular first-class mail. Baker did not seek to notify heirs, did not ask the Court to approve any other method of service, and took no step to learn whether anyone had received notice.

28. On February 21, 2025, the Sheriff sold the Property through an online platform to TLH TD Properties, LLC for $47,800. The Sheriff acknowledged TLH as owner on July 2, 2025. ECF 60 at 3.

29. Plaintiff first learned of the foreclosure and sale in or around June 2025, when he visited the Property and found the locks changed and his personal property missing. He had received no notice of the Petition, the decree, or the sale before then.

30. On August 18, 2025, Plaintiff moved to intervene in the Court of Common Pleas and to redeem the Property. The court granted intervention and denied redemption on September 3, 2025, and ordered the Sheriff to prepare a distribution sheet. ECF 60 at 3–4.

## C. The City's practice for properties of deceased owners

31. The City refers delinquent accounts to GRB and retains GRB to prosecute its tax-foreclosure petitions in the City's name. The City's Law Department supervises that work.

32. On information and belief, the City, through its Law Department's leadership, has a policy or well-settled custom of permitting GRB to proceed against deceased record owners by serving the template notice described above, without any further effort to identify heirs or to seek court approval of another method of service, even where City records show the owner is deceased and the property is unoccupied. Discovery to be conducted will show that at least the last 100 Sheriff Tax Collections sales were conducted using the same template notice as herein. See also FAC ¶¶ 8–9, 15.

33. The practice serves the City's interest in collecting delinquent taxes quickly and cheaply, because identifying heirs and seeking approval of alternative service takes more time and effort, and it leaves surplus proceeds unclaimed. FAC ¶¶ 9, 15.

34. That practice was the moving force behind the notice deficiencies alleged in this case.

35. In the alternative, the City failed to train and supervise GRB and Baker about the constitutional requirements for notice when a record owner is deceased, although the need for that training is obvious, because foreclosure against the property of a decedent is a recurring situation in which the wrong choice deprives the owner's heirs of property without notice.

**D. The delay in distributing the surplus proceeds**

36. The Sheriff's published Conditions of Sheriff Sale state that the Sheriff will file a Schedule of Distribution in the Prothonotary's Office thirty days after the date of sale, and that any balance exceeding the payouts shall be paid to the homeowner at the time of sale. FAC ¶ 26 & App. I, Cond. 17; see Pa.R.C.P. 3136.

37. The sale took place on February 21, 2025. The Sheriff did not file a proposed Schedule of Distribution until October 14, 2025, about eight months after the sale, and only after the Court of Common Pleas ordered it to do so on September 3, 2025. FAC ¶¶ 36–37; ECF 60 at 4.

38. The schedule listed $25,972.76 as "unused proceeds." On November 12, 2025, Plaintiff submitted the Sheriff's Home (Owner) Asset Recovery Team ("HART") form and all required documents. He was told the determination could take six to twelve months. On April 21, 2026, a HART officer informed him by email that the Sheriff had determined the full $25,972.76 must be paid to him. The Sheriff paid it on August 17, 2026. FAC ¶ 38.

39. Plaintiff was therefore without the use of $25,972.76 for about nine months after he submitted his claim, and about eighteen months after the sale, and for about four months after the Sheriff itself determined that the entire amount was payable to him.

40. Bilal is the final policymaker for the Sheriff's Office on the filing of schedules of distribution and the payment of proceeds.

41. The delay Plaintiff experienced is part of a long-standing pattern known to the Sheriff's Office and its policymaker. A forensic investigation ordered by the former City Controller found that the Sheriff's Office had in the past failed to distribute large sums of excess sale proceeds, and the Commonwealth Court discussed that finding in *In re Sheriff's Excess Proceeds Litigation*, 2015 Pa. LEXIS 438 (Pa. Cmwlth. Feb. 25, 2015). FAC ¶ 39.

42. The problem was continuing during the period of Plaintiff's delay. On October 1, 2026, The Philadelphia Inquirer, reporters William Bender and Ryan W. Briggs, article titled: "Philly Sheriff's Office Reneges on Court-Supervision Deal, reported that, in a hearing before Common Pleas Judge Paula Patrick, Deputy Undersheriff Steven Wakefield testified that an internal audit, which so far reaches back only to August 2025, found that checks had not been written on about $20 million in sheriff-sale proceeds, and that Bilal testified under oath that her office had not met its obligations until recently.

43. On information and belief, Bilal knew, through the matters described above, that the Sheriff's Office was not filing schedules of distribution or paying proceeds on time, and she did not correct the practice during the period Plaintiff's funds were withheld. This was deliberate indifference to the rights of owners and heirs entitled to surplus proceeds.

## COUNT I

### 42 U.S.C. § 1983: Fourteenth Amendment Procedural Due Process (Inadequate Notice) Against Baker, GRB, and the City

44. Plaintiff incorporates the preceding paragraphs.

45. Plaintiff held a protected property interest in the Property as the sole heir of its record owners. The Court has found that Plaintiff sufficiently pleaded that interest. ECF 60 at 12.

46. Before the Property could be taken, the Fourteenth Amendment required notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to object. *Jones v. Flowers*, 547 U.S. 220, 226 (2006); *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

47. Baker and GRB knew the record owners were dead; knew the delivery of the certified mailing was unconfirmed; knew or had reason to know the Property was unoccupied; sent the sale notice only by first-class mail to the dead; and took no step to identify or notify heirs. The notice they gave was not reasonably calculated to reach Plaintiff or anyone else with an interest in the Property. See ¶¶ 16–27 above.

48. Baker and GRB acted under color of state law as the City's counsel in a judicial tax-foreclosure proceeding.

49. The City is liable because the notice defects resulted from its policy or custom described in ¶¶ 32–34, or, alternatively, from its deliberate indifference in failing to train and supervise, ¶ 35. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978); *City of Canton v. Harris*, 489 U.S. 378, 387–88 (1989).

50. As a direct result, Plaintiff lost the opportunity to pay the delinquent taxes, to appear in the proceeding, and to redeem or otherwise protect his interest in the Property before the decree and sale. He is entitled to compensatory damages in an amount to be proved at trial, measured by the value of his interest in the Property lost because of the deficient notice, net of the $25,972.76 he received.

51. Baker acted with knowing or reckless disregard of Plaintiff's federally protected rights, and Plaintiff is entitled to punitive damages against Baker. Plaintiff does not seek punitive damages against the City. ECF 60 at 6 n.5.

## COUNT II

### 42 U.S.C. § 1983: Fourteenth Amendment Due Process (Delay in Distributing Surplus Proceeds) Against the City and Bilal

52. Plaintiff incorporates the preceding paragraphs.

53. The $25,972.76 in unused proceeds was property to which Plaintiff, as heir of the record owners, was entitled under the Conditions of Sheriff Sale and Pa.R.C.P. 3136. The Sheriff's own determination confirmed that entitlement. ¶¶ 36–38.

54. As alleged in ¶¶ 40–43, the Sheriff's Office, through Bilal as final policymaker, maintained a policy or custom of failing to file schedules of distribution within the time its own Conditions of Sale promise and of delaying payment of surplus proceeds to owners and heirs, and she was deliberately indifferent to the resulting deprivation. This is a *Monell* claim against the City, as the Court's Memorandum permits. ECF 60 at 15.

55. That policy or custom was the moving force behind the delay Plaintiff experienced: eight months to produce a schedule, and nine months to pay a sum that was identified as owing to him.

56. Plaintiff is entitled to compensatory damages, including the time value of the withheld funds, in an amount to be proved at trial, or nominal damages. Because Bilal acted with deliberate indifference, Plaintiff is also entitled to punitive damages against her individually. Plaintiff does not seek punitive damages against the City. ECF 60 at 6 n.5.

## PRAYER FOR RELIEF

Plaintiff requests that the Court enter judgment in his favor and:

a. award compensatory damages against Baker, GRB, and the City on Count I in an amount to be determined at trial;

b. award compensatory (including time-value) or nominal damages against the City and Bilal on Count II;

c. award punitive damages against Baker on Count I and against Bilal on Count II, but not against the City;

d. award Plaintiff his costs; and

e. award such other and further relief as the Court deems just.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

Brandon Ira Wilchcombe, Plaintiff, pro se
c/o Trust Management Associates, Inc.
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 665-5659
trustmgtassoc@yahoo.com

Dated: October 21st, 2026

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of this **SECOND AMENDED COMPLAINT** was served on all counsel of record by electronic "e-mail" to their Email addresses of record on

this 28th day of October, 2026

Brandon Ira Wilchcombe