**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRANDON IRA WILCHCOMBE,<br>Plaintiff, | : | CIVIL ACTION NO. 26-cv-1331 |
| v. | : | |
| CITY OF PHILADELPHIA, et al,<br>Defendants. | : | JURY TRIAL DEMANDED |

**ORDER**

AND NOW, this _____ day of _______, 2026, upon consideration of the Motion of Defendants, City of Philadelphia and Rochelle Bilal, to Dismiss Plaintiff's Second Amended Complaint, and any response thereto, is is hereby **ORDERED** and **DECREED** that Defendants' Motion to Dismiss is **GRANTED** and all claims asserted against these Defendants are **DISMISSED WITH PREJUDICE.**

By the Court:

______________________________
J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRANDON IRA WILCHCOMBE, Plaintiff, | : | |
| | : | CIVIL ACTION NO. 26-cv-1331 |
| v. | : | |
| CITY OF PHILADELPHIA, et al, | : | |
| Defendants. | : | JURY TRIAL DEMANDED |

**DEFENDANTS CITY OF PHILADELPHIA AND SHERIFF ROCHELLE BILAL'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO F.R.C.P 12(B)(6)**

Defendants, City of Philadelphia and Sheriff Rochelle Bilal (hereinafter "Moving Defendants"), by and through their undersigned counsel, Marshall Dennehey P.C., file this Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth in the accompanying Memorandum of Law, Moving Defendants respectfully request that this Honorable Court dismiss all claims against them with prejudice.

**MARSHALL DENNEHEY, P.C.**

BY: ______________________

JOHN P. GONZALES, ESQ.
Attorney ID No. 71265
2000 Market Street, Suite 2300
Philadelphia, PA 19103
jpgonzales@mdwcg.com
*Attorney for Defendants*
*City of Philadelphia and Rochelle Bilal*

Date: November 11, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRANDON IRA WILCHCOMBE,<br>Plaintiff, | : | |
| | : | CIVIL ACTION NO. 26-cv-1331 |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA, et al,<br>Defendants. | : | JURY TRIAL DEMANDED |
| | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CITY OF PHILADELPHIA AND ROCHELLE BILAL'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO F.R.C.P 12(B)(6)**

Defendants, City of Philadelphia and Sheriff Rochelle Bilal, by and through their undersigned counsel, Marshall Dennehey, P.C., file this Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted. In support thereof, Defendants aver as follows:

The Second Amended Complaint does not cure the deficiencies that prompted dismissal of Plaintiff's original Complaint. Plaintiff has already been given an opportunity to amend and has failed to cure the identified defects, further amendment would be futile. Accordingly, Defendants respectfully request that the Court dismiss the Second Amended Complaint with prejudice.

## I. PROCEDURAL HISTORY

Plaintiff initiated this pro se action on February 26, 2026, arising from the foreclosure and sheriff's sale of 1721 North Hollywood Street, Philadelphia, Pennsylvania. Defendants, including the City and other City-related defendants, moved to dismiss the original Complaint, and Plaintiff filed motions for leave to amend while those motions were being briefed. On August 20, 2026, the Court granted the motions to dismiss and denied Plaintiff's then-pending motions for leave to

amend, while allowing Plaintiff to file an amended pleading as to claims dismissed without prejudice. The Court dismissed Plaintiff's Takings claim with prejudice, dismissed the Philadelphia County Sheriff's Office with prejudice as a non-suable entity, recognized that punitive damages are unavailable against the City, dismissed the notice-based Due Process claim without prejudice as to the City and certain other defendants, and permitted Plaintiff to attempt to replead the unused-proceeds theory as a Monell claim.

Plaintiff filed his First Amended Complaint on September 14, 2026. In that pleading, Plaintiff again named the City and several other defendants and asserted claims based on the tax foreclosure, alleged notice deficiencies, alleged conspiracy, and alleged delay in distributing surplus proceeds. On September 28, 2026, the City Defendants[1], Bid4Assets, and George V. Baker and Goehring, Rutter & Boehm (GRB) moved to dismiss the First Amended Complaint. TLH TD Properties LLC also filed a motion to dismiss Count I of the First Amended Complaint.

Plaintiff then moved for leave to file a Second Amended Complaint on October 23, 2026. ECF 72. Plaintiff represented that the proposed Second Amended Complaint would omit the former Takings count, omit the conspiracy claims and several defendants, replead the notice claim against Baker, GRB, and the City, replead the delayed-proceeds theory as a Monell claim, and add allegations concerning events after September 14, 2026.

On October 26, 2026, the Court granted Plaintiff leave to file a Second Amended Complaint by November 10, 2026, and denied as moot the pending motions to dismiss the First Amended Complaint, including the City Defendants' motion at ECF No. 63. Plaintiff filed the Second Amended Complaint on October 28, 2026.

---

[1] City Defendants refers to the City of Philadelphia, Rochelle Bilal, James Zwolak, Renee Garcia, and Philadelphia Sheriff's Office. Plaintiff's Second Amended Complaint only raises claims against City of Philadelphia and Sheriff Rochelle Bilal.

The Second Amended Complaint names the City, GRB, Baker, and Sheriff Rochelle Bilal as defendants; omits the previously dismissed takings claim and conspiracy claims; and asserts two Section 1983 due-process claims: Count I for alleged inadequate notice against Baker, GRB, and the City, and Count II for alleged delay in distributing surplus proceeds against the City and Sheriff Bilal. Plaintiff is seeking compensatory or nominal damages and the City and Bilal, as well as punitive damages against Bilal.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is a challenge to the legal sufficiency of a complaint. *See* Ashcroft v. Iqbal, 556 U.S. 662, 674 (2009). Factual averments within a complaint must make the claim for relief more than merely speculative. Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is not required to plead in detail all of the facts upon which the claim is based. Id. at 555. Instead, the Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must, however, "allege facts suggestive of [the tortious] conduct," Twombly, 550 U.S. at 563 n.8, as well as sufficient factual allegations that either, satisfy the necessary elements of a claim, or "raise a reasonable expectation that discovery will reveal evidence of . . ." those elements. Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). And so, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679. Notably, a *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Montgomery v. Pinchak, 294 F.3d 492, 500 (3d Cir. 2002) (internal quotation marks and citations omitted). Therefore, the Court is obligated to construe pro se claims "liberally." Alexander v. Gennarini, 144 F. App'x 924, 926 (3d Cir. 2005).

## III. LEGAL ARGUMENT

### a. Plaintiff failed to plead facts showing that notice was not reasonably calculated under the governing statutory framework and that a more comprehensive search under § 7193.2(a)(3) would have identified him.

To state a procedural due process claim under § 1983, Plaintiff must allege that (1) he possessed a protected property interest, and (2) the government deprived him of that interest without constitutionally adequate process. Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006). For an inadequate-notice theory, the constitutional standard comes from Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. Id. at 314.

The Honorable Kelley B. Hodge already found, as laid out in her August 20th Memorandum, that Plaintiff failed to state a plausible notice claim because, although it was unclear what search was conducted under Pennsylvania Municipal Claims and Tax Liens Act[2] (53 P.S. § 7193.2(a)(3)), Plaintiff had alleged no facts suggesting that a search would have identified him. ECF 60 at 13. The Second Amended Complaint does not cure that defect.

The only new allegation on this point is Paragraph 20, which asserts that a "reasonable inquiry" would have identified Plaintiff because he had extensive prior contacts with City offices and was a salaried City Council employee. However, Section 7193.2(a)(3), as the court recognized, concerns review of a title search, title insurance policy, or tax information certificate identifying interested parties of record. It is not a generalized inquiry into City employment records or unrelated City contacts. Therefore, Plaintiff's employment by City Council and alleged prior

[2] This statute governs how a petitioner must serve legal notice to unregistered interested parties before a property can be sold at a free-and-clear tax sale.

contacts with City offices does not make it plausible that the statutory search would have identified him as an interested party in the Property.

Furthermore, Judge Hodge also concluded that even if Baker was aware that the property owners were deceased, the notice that was given in this case (certified mail to the Property addressed to the record owners with notice to heirs and assigns and to the current occupant/tenant, plus posting on the front door) was calculated to reach anyone living at the Property or anyone who walked past it. ECF 60 at 13. Count I should therefore be dismissed for the same reason Judge Hodge identified before: Plaintiff still has not plead facts showing that the notice was not reasonably calculated under the governing statutory framework. Without this showing, Plaintiff's procedural due process claims based on inadequate notice are meritless and should be dismissed with prejudice.

**b. Plaintiff has not plausibly plead a Monell claim against the City in Count I.**

**i. A Monell claim fails without an underlying constitutional violation.**

Municipal liability under 42 U.S.C. § 1983 is derivative of an underlying constitutional deprivation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693 (1978). Monell does not itself create a constitutional violation or impose liability on a municipality merely because one of its policies, customs, or practices is alleged to be unlawful. Thus, where the challenged municipal conduct did not violate the Constitution in the first place, there can be no Monell liability, regardless of whether Plaintiff characterizes that conduct as a "policy" or "custom." As discussed above, Plaintiff has not plead that he had inadequate notice of the sale under the Due Process Clause. Because Plaintiff has not plead an underlying constitutional violation in Count I, there is no predicate for municipal liability. Count I therefore fails as a matter of law.

**ii. A Monell claim cannot be based on respondeat superior liability, and Plaintiff has not pled sufficient facts establishing an official municipal policy or a widespread and well-settled custom.**

A municipality also cannot be held liable under § 1983 solely because it employs or contracts with a tortfeasor. Rather, municipal liability attaches only when the municipality itself causes the constitutional deprivation through an official policy or custom, or through a failure or inadequacy in training, supervision, or discipline that reflects a deliberate or conscious choice. *See* Monell, 436 U.S. at 690-92; City of Canton v. Harris, 489 U.S. 378, 387-88 (1989). A policy exists when an official possessing final authority to establish municipal policy with respect to the challenged action issues an official proclamation, policy, or edict. Whereas a custom exists when a course of conduct, although not formally authorized, is so permanent and well-settled as to virtually constitute law. Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990). In either instance, the plaintiff must establish that a municipal policymaker was responsible for the policy or, through knowledge and acquiescence, the alleged custom. Id.

The Court previously dismissed Plaintiff's Due Process claims against the City because the original Complaint failed to allege a municipal policy, custom, or actionable failure to train. Although the Second Amended Complaint now invokes those theories, it adds labels rather than factual allegations sufficient to support them.

Plaintiff alleges that the City refers delinquent accounts to GRB, retains GRB to prosecute tax-foreclosure petitions, and that the City's Law Department "supervises that work." These allegations describe the City's contractual relationship with outside counsel and its general oversight of the firm's legal work. These allegations do not establish that the City adopted or implemented those decisions as municipal policy, knew of and acquiesced in a longstanding practice of constitutionally deficient notice, or maintained a deliberately indifferent training or

supervisory regime that caused the alleged deprivation. The City's retention of GRB and general supervision of its work cannot, standing alone, transform the firm's alleged misconduct into municipal action. *See* Monell, 436 U.S. at 691 (rejecting municipal liability based on respondeat superior).

Plaintiff attempts to bridge this gap by alleging, on information and belief, that the City, through unspecified Law Department leadership, maintained a policy or well-settled custom of permitting GRB to proceed against deceased record owners using template notices, without further efforts to identify heirs or employ another method of service. However, this allegation merely recites the elements of a Monell claim without identifying facts that plausibly establish either an official municipal policy or a widespread and well-settled custom.

Plaintiff identifies no City ordinance, directive, or other affirmative decision by an official possessing final policymaking authority that establishes the alleged notice procedure. Nor does Plaintiff allege facts showing that the City's Law Department leadership, or any other official with final policymaking authority over the challenged procedures, knew of and acquiesced in a longstanding practice of proceeding against deceased record owners without reasonable efforts to identify or notify interested parties. The conclusory assertion that unspecified Law Department leadership permitted GRB to use template notices does not establish who made the relevant municipal decision, whether that individual possessed final policymaking authority, or whether the alleged practice was sufficiently widespread and permanent to constitute municipal custom. Without these facts, Plaintiff's Monell claim based on policy or custom fails.

**iii. Plaintiff has not pled the requisite standard to establish a failure to train claim.**

To the extent Plaintiff alternatively attempts to assert a failure to train or failure to supervise claim, that theory fares no better. A municipality's failure to train or supervise its personnel may

support § 1983 liability only when the deficiency reflects deliberate indifference to the constitutional rights of those affected and is the moving force behind the alleged constitutional deprivation. *See* City of Canton, 489 U.S. at 388–89. Deliberate indifference is a stringent standard of fault, ordinarily requiring a pattern of similar constitutional violations sufficient to put municipal policymakers on notice that existing training or supervision is inadequate. *See* Connick v. Thompson, 563 U.S. 51, 61–63 (2011).

The Second Amended Complaint does not identify any specific deficiency in the City's training or supervisory practices, any complaints or other notice to City policymakers concerning GRB's foreclosure practices, or any facts demonstrating that the City consciously disregarded a known or obvious risk that its oversight of GRB would result in constitutional violations. *See* Connick, 563 U.S. at 62 ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference.")

Nor does the Second Amended Complaint plausibly allege the requisite causal connection. Plaintiff must identify a specific deficiency in the City's own training or supervision and plausibly allege that the deficiency caused the particular constitutional deprivation. *See* City of Canton, 489 U.S. at 391. Even if Baker and GRB allegedly failed to take additional steps to locate or notify potential heirs, which the court has already determined was not necessary, this does not establish that any deficiency in the City's training or supervision caused that conduct, much less that the City consciously disregarded a known risk that such a deficiency would result in constitutional violations.

Accordingly, even accepting Plaintiff's allegations concerning the City's retention and supervision of GRB as true, the Second Amended Complaint does not plausibly allege that the City itself adopted an unconstitutional policy, acquiesced in a well-settled unconstitutional custom,

or maintained a deliberately indifferent training or supervisory practice that was the moving force behind the alleged inadequate notice. Count I should therefore be dismissed as to the City.

**c. Count II fails to assert a procedural due process violation where the Sheriff's Office recognized Plaintiff's entitlement to the surplus proceeds and distributed the entirety of the $25,972.76 to him on August 17, 2026.**

Count II asserts a § 1983 Due Process claim against the City and Sheriff Bilal based on the alleged delay in distributing $25,972.76 in surplus proceeds from the Sheriff's Sale. Plaintiff alleges that the sale occurred on February 21, 2025. The Sheriff filed a proposed Schedule of Distribution on October 14, 2025, Plaintiff submitted his Homeowner Asset Recovery Team ("HART") claim on November 12, 2025, the Sheriff's Office confirmed his entitlement to the proceeds on April 21, 2026; and the Sheriff paid him the entire $25,972.76 on August 17, 2026. Those allegations do not plausibly establish that Defendants deprived Plaintiff of property without constitutionally adequate process. To the contrary, Plaintiff availed himself of the HART process in order to receive the proceeds.

Plaintiff relies on Pennsylvania Rule of Civil Procedure 3136 which governs the distribution of proceeds from a sheriff's sale to argue that his rights were violated when the Sheriff failed to file a proposed schedule of distribution within thirty days of the sale as the statute requires. Pa.R.C.P. No. 3136. Plaintiff may rely on state law to identify the property interest at issue but that does not mean every alleged violation of a state procedural rule automatically gives rise to a federal procedural due process claim. Steele v. Cicchi, 855 F.3d 494, 507 (3d Cir. 2017); Layton v. Beyer, 953 F.2d 839, 850 (3d Cir. 1992)(finding that although state regulations required that an inmate who is placed in Prehearing Management Control Unit is entitled to a hearing within five working days, the state regulation did not compel the conclusion that delay beyond the five working days violated federal constitutional due process). The Third Circuit distinguishes between

the existence of a protected interest, which may be informed by state law, and the separate federal question of what process the Constitution requires before that interest may be withheld or affected. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 195 (3d Cir. 2009). Thus, even assuming Plaintiff had a protected property interest in the surplus proceeds, the alleged failure of the Sherrif's Office to comply with Rule 3136's timetable does not itself establish a Fourteenth Amendment violation.

Plaintiff must plausibly allege that the procedures actually afforded to him were constitutionally inadequate. He does not do so here, because his own allegations show that the Sheriff's Office accepted his claim, reviewed it, recognized his entitlement, and paid him the full $25,972.76. Plaintiff identifies no requested hearing, review, or corrective procedure that was denied to him, and he alleges no erroneous determination that remained uncorrected. Instead, Plaintiff's Second Amended Complaint describes a claim that was reviewed, approved, and paid within the processing period initially disclosed to Plaintiff, and not a denial of entitlement or a refusal to provide a mechanism for obtaining the funds.

Plaintiff characterizes the time taken to complete the payment process as unconstitutional. However, a delay in administrative processing does not necessarily establish a deprivation of property without due process of law. Plaintiff does not identify any facts demonstrating that the alleged delay resulted from a constitutionally deficient procedure rather than the processing of his individual claim. Plaintiff pleads no facts showing that the nine-month period following his HART submission caused the kind of serious or irreparable loss that rendered the available process constitutionally inadequate. Nor does he allege that Defendants denied his claim, required him to commence another proceeding to establish entitlement, or paid less than the amount due. The mere passage of time, without facts showing that the delay rendered the process constitutionally

inadequate, does not transform an administrative payment process into a federal constitutional deprivation. Count II should therefore be dismissed.

**d. In order for Sheriff Bilal to be sued in her individual capacity, Plaintiff must allege her personal involvement in the alleged constitutional violation.**

Plaintiff has not suffered a constitutional violation in this case as discussed at length above. However, assuming arguendo that he suffered a violation in the form of inadequate notice or delay in distributing proceeds, Plaintiff is required to allege Sheriff Bilal's personal involvement in the violation because he is suing her in her individual capacity. ECF 74 at ¶ 9. Such involvement may be established by particularized allegations that Bilal personally participated in the violation, directed others to commit it, or had actual knowledge of and acquiesced in her subordinates' conduct. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

Plaintiff has not met that standard, and it is insufficient merely to hypothesize that she participated in the underlying constitutional violation because of her position as Sheriff and final policymaker. Her supervisory position or status as a final policymaker, standing alone, is insufficient to impose individual liability. A.M. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)("[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.")(citations omitted).

Plaintiff does not allege that Bilal personally processed Plaintiff's HART submission, reviewed his supporting documents, determined when payment would issue, directed any employee to delay payment, or otherwise participated in the handling of Plaintiff's claim. Nor does Plaintiff allege when or how Bilal acquired contemporaneous knowledge of Plaintiff's claim or

what action she took after acquiring that knowledge. Therefore, Plaintiff's claim against Sheriff Bilal in her individual capacity fail as a matter of law. [3]

**e. Rochelle Bilal is entitled to qualified immunity.**

Qualified immunity protects officials performing discretionary governmental functions from damages unless their conduct violates a clearly established statutory or constitutional right of which a reasonable official would have known. James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012). The inquiry asks whether the pleaded facts establish a constitutional violation and whether the asserted right was clearly established when the challenged conduct occurred; failure on either prong entitles the official to judgment as a matter of law. Although qualified immunity is an affirmative defense, it may be resolved under Rule 12(b)(6) when immunity is established on the face of the complaint. Stringer v. Cnty. of Bucks, 141 F.4th 76, 81 (3d Cir. 2025).

Sheriff Bilal is independently entitled to qualified immunity because the constitutional right Plaintiff asserts was not clearly established under the particular circumstances alleged. The clearly established inquiry requires the Court to define the asserted right at an appropriate level of specificity, rather than relying on generalized formulations of constitutional protections. Williams v. Sec'y Pa. Dep't of Corr., 117 F.4th 503, 515 (3d Cir. 2024). Existing precedent must have placed the constitutional question beyond debate and provided the official fair warning that the particular conduct was unlawful. Minor v. Delaware River & Bay Auth., 70 F.4th 168, 174 (3d Cir. 2023). Although an identical factual precedent is not required, the unlawfulness of the particular conduct

[3] Plaintiff's demand for punitive damages against Sheriff Bilal should also be dismissed because the Second Amended Complaint does not allege facts demonstrating the requisite culpable state of mind. Under Third Circuit law, punitive damages under § 1983 require conduct that is, at a minimum, reckless or callous toward federally protected rights. Conclusory allegations that conduct was willful, intentional, or reckless do not suffice. Smith v. Wade, 461 U.S. 30, 33 (1983). Here, Plaintiff alleges no facts showing that Sheriff Bilal acted with an evil motive or intent, knowingly violated a federal right, or recklessly or callously disregarded such a right. At most, the pleading alleges administrative delay followed by payment of the full surplus amount, which is insufficient to support punitive damages against Sheriff Bilal individually.

must have been apparent in light of existing law. Williams, 117 F.4th at 515–16. In the Third Circuit, clearly established law generally must derive from binding Supreme Court or Third Circuit precedent, or a robust consensus of persuasive authority from other Courts of Appeals. Minor, 70 F.4th at 174.

Here, the relevant right cannot be framed simply as a general right to receive meaningful process or timely access to property. Rather, the question is whether a reasonable Sheriff would have understood that completing the administrative processing and distributing surplus proceeds approximately four months after confirming the Plaintiff's entitlement, and within the six to twelve-month processing period communicated to the Plaintiff violated the Fourteenth Amendment. There is no Supreme Court or Third Circuit precedent establishing that such a processing period, under these circumstances, constitutes an unconstitutional deprivation of property.[4] The processing period was disclosed to Plaintiff, the Sheriff's Office ultimately confirmed Plaintiff's entitlement to the proceeds, and the full amount of the surplus proceeds was distributed.

---

[4] Plaintiff's reliance on In re Sheriff's Excess Proceeds Litigation does not supply the missing precedent. The Second Amended Complaint cites that matter as 2015 Pa. LEXIS 438 (Pa. Cmwlth. Feb. 25, 2015), but the reported Commonwealth Court decision bearing that caption is reported at 98 A.3d 706 and was issued in 2014; Plaintiff's citation therefore appears imprecise. In re Sheriff's Excess Proceeds Litig., 98 A.3d 706, 716 (Pa. Commw. Ct. 2014). More importantly, the reported decision recounts a class action arising from allegations that the Sheriff's Office had failed for years to distribute millions of dollars in excess proceeds and identifies common questions concerning whether the Office had a return process, followed that process, and failed to return proceeds. The decision does not hold that any particular payment interval violates the Fourteenth Amendment, much less that payment approximately four months after confirmation of entitlement is unconstitutional. Indeed, later Pennsylvania authority describes In re Sheriff's Excess Proceeds Litigation as a decision concerning the appealability of an order denying class certification, not as a merits decision establishing a constitutional deadline for payment. Doe v. Franklin Cnty., 272 A.3d 1022, 1030 (Pa. Commw. Ct. 2022). The case's allegations of systemic, prolonged nonpayment are materially different from the pleaded sequence here, which ended with payment of the full $25,972.76 approximately four months after confirmation of entitlement and within the disclosed six to twelve month processing period.

Accordingly, even assuming Plaintiff could establish a procedural due process violation, the unlawfulness of Sheriff Bilal's conduct was not clearly established at the time. A reasonable official would not have understood that the processing period alleged here, culminating in full payment of the surplus proceeds, violated the Fourteenth Amendment. Sheriff Bilal is therefore entitled to qualified immunity.

## IV. CONCLUSION

Based on the foregoing, Moving Defendants, City of Philadelphia and Sheriff Rochelle Bilal, respectfully request that this Honorable Court enter an Order, in the form attached hereto, dismissing Plaintiff's claims against Moving Defendants, with prejudice.

**MARSHALL DENNEHEY, P.C.**

BY: ______________________________

JOHN P. GONZALES, ESQUIRE
Attorney ID No. 71265
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2871 Fax (215) 575-0856
Email: jpgonzales@mdwcg.com
*Attorney for Defendants*

Date: November 11, 2026

**CERTIFICATE OF SERVICE**

I, JOHN P. GONZALES, ESQUIRE, do hereby certify that a true and correct copy of Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint was electronically filed with the Court on the date below and is available for viewing and downloading from the ECF System.

**MARSHALL DENNEHEY, P.C.**

BY: ______________________________

JOHN P. GONZALES, ESQUIRE
Attorney ID No. 71265
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2871 Fax (215) 575-0856
Email: jpgonzales@mdwcg.com
*Attorney for Defendants*

Date: November 11, 2026