2026 NOV 25 PM 12:44
USDC-EDPA REC'D CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRANDON IRA WILCHCOMBE,<br>Plaintiff, | : | CIVIL ACTION |
| | : | NO. 2:26-cv-01331-KBH |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| CITY OF PHILADELPHIA, et al.,<br>Defendants. | : | |

REC'D NOV 2 5 2026

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF DEFENDANTS CITY OF PHILADELPHIA AND SHERIFF ROCHELLE BILAL TO DISMISS THE SECOND AMENDED COMPLAINT (ECF 76)**

Citations to "ECF 76" are to the ECF-stamped page numbers of the City's motion. "SAC" is the Second Amended Complaint, ECF 74. "ECF 60" is the Court's August 20, 2026 Memorandum.

## I. INTRODUCTION

The City's motion rests on two premises, and the record refutes both. The first is that "[t]he only new allegation" on notice is Paragraph 20. ECF 76 at 6. In fact the SAC adds the specific facts this Court found missing: the Property was unoccupied and City records showed it vacant with no water service (para. 24); the certified-mail receipt bore no signature or recipient (para. 22); the posting is disputed (para. 23); the only search was a Tax Information Certificate nine months old (paras. 18-19); the City's own collection counsel admits it mails the same template "in all cases" and takes no further step to find heirs (para. 17); and at least the last 100 City tax-collection sales used that same template (para. 32). The City addresses none of these allegations.

The second premise is that withholding $25,972.76 for eight months before any schedule existed, and for four more months after the Sheriff herself determined the full amount was owed to Plaintiff, is mere "administrative processing." ECF 76 at 12-13. The City never mentions the SAC's allegations that this was the operation of a known, office-wide practice of non-distribution, documented by a forensic investigation, by an internal audit finding unwritten checks on about $20 million in sale proceeds, and by the Sheriff's reported sworn acknowledgment that her office had not met its obligations. SAC paras. 40-43, 54-55. Construed liberally, the SAC states both claims. The motion should be denied.

## II. THE SAC'S ALLEGATIONS

**Count I (notice).** The City, through its Law Department, referred the delinquency to GRB, which prosecutes City tax-foreclosure petitions in the City's name under Law Department supervision. SAC paras. 14, 31. The petition named only the record owners, Arthur Wilchcombe (died 1996) and Mary Wilchcombe (died 2019). Id. paras. 10, 14. Every notice was a template captioned "WITH NOTICE TO HEIRS & ASSIGNS" and addressed to "current occupant/tenant." Id. para. 16. GRB has stated in this case that this language "is used in all cases for mail service to all individual record and registered owners." Id. para. 17 (quoting ECF 66-2 at 7). The certified-mail receipt bore no signature or recipient, and no further step followed. Id. para. 22. The Property was unoccupied, and City records showed it vacant with no water service. Id. para. 24. The decree and sale notice went by first-class mail only, again to the dead owners. Id. para. 27. That decree and notice were also served on the City Law Department, to the attention of the Divisional Deputy City Solicitor. ECF 75-8 at 1. The City, through Law Department leadership, has a policy or custom of permitting this template procedure against deceased owners even where City records show the owner deceased and the property unoccupied. SAC paras. 32-34. Alternatively, it failed to train or supervise on this recurring situation. Id. para. 35.

**Count II (surplus).** The Sheriff's published Conditions of Sale promise a Schedule of Distribution thirty days after sale and payment of any balance to the homeowner. SAC para. 36; Pa.R.C.P. 3136. The sale occurred February 21, 2025. No schedule was filed until October 14, 2025, and only after the Court of Common Pleas ordered it. SAC para. 37. Plaintiff filed his HART claim November 12, 2025. On April 21, 2026 the Sheriff determined the full $25,972.76 must be paid to him; payment came August 17, 2026. Id. paras. 38-39. Bilal is the final policymaker for schedules and payments. Id. para. 40. A forensic investigation ordered by the former City Controller found the Office had failed to distribute large sums of excess proceeds. Id. para. 41. As reported in The Philadelphia Inquirer on October 1, 2026, a Deputy Undersheriff testified that an internal audit found checks unwritten on about $20 million in sale proceeds, and Bilal testified under oath that her office had not met its obligations until recently. Id. para. 42. Bilal knew of the practice and did not correct it while Plaintiff's funds were withheld. Id. para. 43. Count II is pleaded as a Monell claim against the City, as the Court permitted, and against Bilal. Id. para. 54; ECF 60 at 15; see ECF 76 at 4 (acknowledging the Court "permitted Plaintiff to attempt to replead the unused-proceeds theory as a Monell claim").

## III. LEGAL STANDARD

Plaintiff accepts the standard the City recites. ECF 76 at 5. Well-pleaded facts are taken as true; pro se pleadings are construed liberally; and a complaint need only "raise a reasonable expectation that discovery will reveal evidence of" each element. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (cited at ECF 76 at 5).

## IV. COUNT I STATES A NOTICE CLAIM

### A. The City ignores every new allegation except Paragraph 20.

This Court reasoned that mail to "current occupant/tenant" was calculated to reach anyone living at the Property, that posting would reach passers-by, and that the prior pleading did not allege that the certified mail failed or that Baker knew it had. ECF 60 at 13-14. The SAC now alleges that no one lived there and the City's own records said so (para. 24); that the posting did not occur (para. 23); and that the return receipt, on its face, showed delivery unconfirmed (para. 22). The City's motion repeats the Court's earlier reasoning (ECF 76 at 7) without acknowledging that the factual premises of that reasoning are now contradicted by the pleading. On a Rule 12(b)(6) motion, those facts must be accepted.

### B. Due process is measured by the Constitution, not by the statute's search provision.

The City frames the question as whether notice was reasonably calculated "under the governing statutory framework," and argues that Section 7193.2(a)(3) requires only a review of record title documents. ECF 76 at 6-7. But the constitutional test is whether notice was "reasonably calculated, under all the circumstances," to apprise interested parties. Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950). A State's compliance with its own statute does not end the inquiry. Jones v. Flowers, 547 U.S. 220 (2006). Where the government knows its chosen method will not reach the person entitled to notice, statutory compliance is not enough. Robinson v. Hanrahan, 409 U.S. 38, 40 (1972) (per curiam); Covey v. Town of Somers, 351 U.S. 141, 146-47 (1956). "[P]rocess which is a mere gesture is not due process." Mullane, 339 U.S. at 315.

Here the City, as petitioner, sent notice addressed to two people it had reason to know were dead, one for nearly 28 years, to a house its own records showed vacant with no water, received back an unsigned receipt, and did nothing further. Mail to "occupant" and posting may be reasonable follow-up steps when a property may be occupied. They are not reasonably calculated to inform anyone when, as alleged, there is no occupant and the addressees are deceased.

### C. Whether Plaintiff was reasonably ascertainable is a fact question.

The Constitution requires notice by mail or other means as certain to ensure actual notice to a party whose name and address are "reasonably ascertainable." Mennonite Bd. of Missions v. Adams, 462 U.S.

791, 800 (1983). That standard turns on "reasonably diligent efforts," id. at 798 n.4, not on the four corners of a title certificate. The SAC alleges that no updated title, estate, or heir inquiry was made after the July 2023 certificate (paras. 18-19), and that a reasonable inquiry would have found Plaintiff, a salaried City employee with extensive contacts with City offices (para. 20). The City does not say what search it actually performed or why a diligent one would have failed. What a reasonably diligent inquiry would have revealed cannot be resolved against Plaintiff on the pleadings.

**D. The Court did not hold that further steps were unnecessary.**

The City asserts the Court "already determined" that additional steps to locate heirs were "not necessary." ECF 76 at 10. The Court made no such merits determination. It dismissed the notice claim without prejudice for insufficient factual allegations and granted leave to replead. ECF 60 at 12-15. The SAC supplies those allegations.

**V. THE SAC PLEADS MONELL LIABILITY ON COUNT I**

**A. The predicate violation is pleaded.**

The City's first Monell argument depends entirely on the absence of a constitutional violation. ECF 76 at 7. Part IV disposes of it.

**B. The SAC pleads a uniform practice, not respondeat superior.**

Municipal liability attaches where the act complained of implements a generally applicable policy, where a policymaker acts, or where a policymaker fails to act despite an obvious need. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003). A custom may be shown through the knowledge and acquiescence of the decisionmaker. Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). The SAC pleads facts, not labels:

- **The notice was the City's own act.** The petition was prosecuted in the City's name, by counsel the City retained, under Law Department supervision. SAC paras. 14, 31.
- **The practice is uniform by the City's agent's own admission.** GRB has told this Court the template "is used in all cases." Id. para. 17. A standardized procedure applied in every case is the definition of a generally applicable policy.
- **The practice is widespread.** At least the last 100 City tax-collection sales used the same template. Id. para. 32. That allegation, accepted as true, raises a reasonable expectation that discovery will reveal a well-settled custom. Phillips, 515 F.3d at 234.
- **The policymaker had knowledge.** The Law Department supervises the work and was itself served with the decree and sale notice in this case, listing only the dead owners and "current occupant/tenant." SAC para. 31; ECF 75-8 at 1.
- **The practice serves a municipal interest.** It collects taxes faster and cheaper by skipping heir identification. SAC para. 33.

Where the policy itself is alleged to be unconstitutional, a single application suffices and no pattern of prior violations is required. Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404-05 (1997). The City's reliance on Connick v. Thompson, 563 U.S. 51 (2011), concerns only the alternative failure-to-train theory. ECF 76 at 10.

**C. The failure-to-train theory is pleaded in the alternative.**

Foreclosure against the property of a decedent is a recurring situation in which, without guidance, counsel predictably mails only to the dead. SAC para. 35. In a narrow range of cases the need for training is "so obvious" that a single violation suffices. City of Canton v. Harris, 489 U.S. 378, 390 & n.10 (1989); Connick, 563 U.S. at 63-64.

**D. Alternatively, leave to name the policymaker.**

If the Court requires the policymaker to be identified by office, Plaintiff requests leave to name the City Solicitor and the Divisional Deputy City Solicitor served with tax-sale notices. ECF 75-8 at 1.

## VI. COUNT II STATES A DUE PROCESS CLAIM

### A. A protected interest was deprived.

A former owner has a property interest in tax-sale surplus. Tyler v. Hennepin County, 598 U.S. 631 (2023). The City does not contest the interest. ECF 76 at 12. It is immaterial that a deprivation is temporary; "[a]ny significant taking of property by the State is within the purview of the Due Process Clause." Fuentes v. Shevin, 407 U.S. 67, 84-86 (1972).

### B. Plaintiff does not claim that a Rule 3136 violation is itself unconstitutional.

The City attacks an argument the SAC does not make. ECF 76 at 11-12. Plaintiff agrees that state rules do not define the process due. Rule 3136 and the Conditions of Sale are pleaded to establish the entitlement (para. 53) and to show that the Sheriff's Office disregarded its own published timetable as a matter of practice (paras. 40-43, 54).

### C. The process actually provided was inadequate.

Whether delay offends due process depends on the importance of the private interest and the harm caused by delay, the government's justification, and the likelihood that the interim decision is mistaken. FDIC v. Mallen, 486 U.S. 230, 242 (1988); see Mathews v. Eldridge, 424 U.S. 319, 335 (1976). Each factor favors Plaintiff:

- **For eight months there was no process at all.** No claim could be made until a schedule existed, and the Sheriff filed none until a court ordered it. SAC para. 37. The City's point that Plaintiff "availed himself of the HART process" (ECF 76 at 11) ignores that the process did not begin until a court compelled the first step.
- **The last four months had no justification.** On April 21, 2026, the Sheriff determined that the full amount was owed to Plaintiff. SAC para. 38. Nothing remained to decide, the risk of error was nil, and the government has no legitimate interest in holding money it has already adjudged to belong to someone else.
- **Announcing a delay does not make it constitutional.** The City stresses that payment came within the six-to-twelve months Plaintiff was told to expect. ECF 76 at 12, 15. But property "cannot be defined by the procedures provided for its deprivation." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985).

Loudermill held that a nine-month delay in a contested administrative appeal was not, on the pleadings there, a separate violation, because the delay "stemmed in part from the thoroughness of the procedures." 470 U.S. at 547. Here, the first eight months reflect no procedure at all, and the final four reflect nothing but withholding after the decision was made. Likewise, City of Los Angeles v. David, 538 U.S. 715 (2003) (per curiam), upheld a 27-day wait for a hearing that was justified by the administrative work of convening it. No hearing was pending here, and the City offers no administrative need for holding a sum already found to be owed.

### D. The City ignores the SAC's policy allegations.

The City argues Plaintiff identifies no "constitutionally deficient procedure rather than the processing of his individual claim." ECF 76 at 12. That is exactly what Paragraphs 40-43 and 54-55 plead, and the motion does not mention them: a forensic investigation finding the Office failed to distribute large sums (para. 41); an internal audit finding checks unwritten on about $20 million, covering the period of Plaintiff's claim (para. 42); the Sheriff's reported sworn acknowledgment that the Office had not met its obligations (para. 42); and her knowledge of, and failure to correct, the practice (para. 43). A practice that persistent, known to the final policymaker, is a custom. Beck, 89 F.3d at 971. Plaintiff's delay was that custom operating as it always had.

**Correction.** SAC Paragraph 41 cites In re Sheriff's Excess Proceeds Litigation as "2015 Pa. LEXIS 438 (Pa. Cmwlth. Feb. 25, 2015)." The City correctly notes that the reported decision is In re Sheriff's Excess Proceeds Litigation, 98 A.3d 706 (Pa. Cmwlth. 2014), decided July 31, 2014. ECF 76 at 15 n.4. Plaintiff regrets the error and adopts the correct citation. Plaintiff relies on that decision only for the historical fact, which the City acknowledges, that the Office's non-distribution of excess proceeds was the subject of class litigation, not for any holding fixing a constitutional deadline.

## VII. SHERIFF BILAL

### A. Personal involvement is pleaded under the standard the City cites.

A policymaker is individually liable where she, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (cited at ECF 76 at 13). Under that theory, personal handling of Plaintiff's file is not required. The SAC alleges each element: final policymaking authority (paras. 9, 40); knowledge, confirmed by her reported sworn testimony (para. 42); failure to correct while Plaintiff's funds were withheld (para. 43); and causation (para. 55).

### B. Qualified immunity does not reach the City and is premature as to Bilal.

The City cannot invoke qualified immunity. Owen v. City of Independence, 445 U.S. 622, 638 (1980). As to Bilal, the City defines the right as payment "approximately four months after confirming the Plaintiff's entitlement." ECF 76 at 15. That framing omits the eight months before any schedule existed and the allegation that the delay resulted from a known, office-wide practice the Sheriff acknowledged under oath. Whether the facts show an isolated processing interval or a knowing practice of withholding funds the government concedes it owes cannot be resolved on the face of the complaint. The defense should await a factual record.

### C. Punitive damages.

Punitive damages are available for "reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). Continuing a known practice of non-payment after acknowledging the Office was not meeting its obligations meets that standard at the pleading stage. SAC paras. 42-43, 56; contra ECF 76 at 14 n.3.

## VIII. DISMISSAL WITH PREJUDICE IS UNWARRANTED

The City argues further amendment would be futile because Plaintiff "has already been given an opportunity to amend." ECF 76 at 3. The SAC is the first pleading after the Court's merits ruling, filed with leave, and it adds the facts that ruling called for. In civil-rights cases, curative amendment should be permitted unless inequitable or futile. Phillips, 515 F.3d at 245. Should the Court find any element insufficiently pleaded, Plaintiff requests leave to amend.

## IX. CONCLUSION

Plaintiff respectfully requests that the Court deny the Motion to Dismiss of Defendants City of Philadelphia and Sheriff Rochelle Bilal (ECF 76), or, in the alternative, that any dismissal be without prejudice and with leave to amend.

Respectfully submitted,

Brandon Ira Wilchcombe, Plaintiff, pro se
c/o Trust Management Associates, Inc.
1650 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 665-5659
trustmgtassoc@yahoo.com

Dated: November 24th, 2026

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRANDON IRA WILCHCOMBE,<br>Plaintiff,<br><br>v.<br><br>CITY OF PHILADELPHIA, et al.,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br>NO. 2:26-cv-01331-KBH |

**[PROPOSED] ORDER**

AND NOW, this ______ day of ____________________, 2026, upon consideration of the Motion of Defendants City of Philadelphia and Rochelle Bilal to Dismiss Plaintiff's Second Amended Complaint (ECF 76), and Plaintiff's opposition thereto, it is hereby ORDERED that the Motion is DENIED.

BY THE COURT:

______________________________
HODGE, J.

## CERTIFICATE OF SERVICE

I certify that on November 25th, 2026, I served a true and correct copy of the foregoing Memorandum and proposed Order on all counsel of record by **[ECF / e-mail / first-class mail]**, including:

- John P. Gonzales, Esquire, Marshall Dennehey, P.C., 2000 Market Street, Suite 2300, Philadelphia, PA 19103, jpgonzales@mdwcg.com, counsel for Defendants City of Philadelphia and Rochelle Bilal; and
- Jane C. Schleichter, Esquire, GRB Law, 1601 Cherry Street, Suite 100, Philadelphia, PA 19102, jschleichter@grblaw.com, counsel for Defendants Goehring, Rutter & Boehm and George V. Baker, Jr.

Brandon Ira Wilchcombe, pro se